[No. 28214.' Department Two. February 4, 1941.]

THE STATE OF WASHINGTON, *on the Relation of Signe Olson, Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*

THE STATE OF WASHINGTON, *on the Relation of Henrietta E. Green, Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

*Charles F. Riddell,* for appellants.

*A. C. Van Soelen* and *John E. Sanders,* for respondents.

[1] Reported in 110 P. (2d) 159.

SIMPSON, J.—Independent actions in mandamus were brought in the superior court by plaintiffs so that they might be allowed to fill civil service positions, known as "account clerks," and to recover the difference in salary between that position and the next lower position of "intermediate clerk." The cases were tried together, and have been consolidated for purposes of appeal. The trial court denied the petitions and dismissed the actions. Plaintiffs appealed.

They assign error as follows: In refusing to enforce the resolution of the civil service commission; in holding that the duties of "account clerk" under the 1937 reclassification were substantially identical with the duties of "bookkeeper" under the 1917 classification by the civil service commission of Seattle; and in denying to each plaintiff her right to standing under the 1937 reclassification as "account clerk."

The facts may be stated as follows: The basic civil service law of the city of Seattle is found in Art. XVI of its city charter. That article provides for, and defines the duties and authority of, the civil service commission. Among the duties of that commission are those of classifying the civil service of the city, of allocating the duties of a particular occupation to a classified position, and of recognizing the standing of an individual city employee as being entitled to perform the duties of a particular position. General classifications were made in 1917 and in 1937. Subsequent to 1917 and prior to 1937, the various positions were reclassified from time to time in order to correspond to changed conditions of individual positions and with the modification and development of the activities of the city.

During the year 1937, the city employed Public Administration Service, a private corporation, commonly referred to as "P. A. S.," to survey the civil service of

the city and recommend a reclassification thereof. The "P. A. S." made a thorough investigation, and then filed its report with the city comptroller. The report classified the entire civil service of the city of Seattle. The civil service commission accepted the report and reclassified the civil service, effective as of June 21, 1938. The reclassification has since been adopted and recognized by the city in successive budget ordinances.

Prior to 1937, appellants' positions were classified as "clerk B-3," which was not one of the positions recognized by the new classification. The civil service records of appellants are as follows: Mrs. Olson appointed "clerk-typist, B-3," July 14, 1927, later changed to "clerk B-3." The letter "B" signifies clerical service, the figure "3" signifies grade. January 24, 1929, Miss Green was appointed "Elliot-Fisher operator B-3." September 5, 1929, her position was changed to "clerk B-3," at which time the city transferred the Elliott-Fisher machines to the warehouse.

January 4, 1932, appellants made applications for promotional examination to "bookkeeper B-4," one grade above "clerk B-3." Their positions on the eligible list were Green No. 24, Olson No. 42. Their eligibility expired before vacancies occurred in which they could be certified and appointed.

October 22, 1936, a vacancy occurred in the higher position of "bookkeeper B-4," and there being no eligible list, appellant Olson was given a leave of absence from her position as "clerk B-3," and received a temporary non-civil service appointment as "bookkeeper B-4." May 16, 1937, appellant Green was given temporary appointment to the non-civil service vacancy known as "bookkeeper B-4."

Under the civil service reclassification of June 21, 1938, the position of "bookkeeper B-4" was eliminated and a new position, "account clerk," was created. The

position of "account clerk" included many bookkeeping duties. During the month of March, 1939, applications were made by appellants for examination for "account clerk." Appellant Green passed as No. 53 on the eligible list, while appellant Olson failed in the examination.

The position known as "clerk B-3" under the old classification was denominated "intermediate clerk" under the new classification.

February 16, 1940, regular appointments were made to the vacancies held by appellants in the position of "account clerk" from the eligible list as a result of the examination. February 16, 1940, appellants were returned to the position of "intermediate clerk." Their leaves of absence were canceled and their non-civil service appointments were terminated.

Some time prior to January 1, 1939, the civil service commission adopted a resolution, a portion of which is as follows:

"(4) Where the natural, reasonable or necessary development of an individual position has resulted in an allocation to a higher class than would be indicated by the original title under which the incumbent gained regular standing, such employee will have standing under the new title when (a) that position includes the original duties to which he was properly appointed, (b) the higher classification occurs in the same general character of work, and (c) is occasioned by added duties, difficulty, value, scope or responsibility."

Another resolution relating to the same subject was adopted, March 20, 1940, a portion of which reads as follows:

"Standing in a reclassified position applies only to the proper incumbent, then doing the work, who regularly qualified for the primary duties of the position, and is recognized only to prevent the removal of a regular employee from his own job when its title is

changed. Standing should not be claimed or used as a promotion without examination in other cases."

Appellants contend that the position of "clerk B-3," originally held by them, had properly developed to that of "account clerk" at the time of the 1937 reclassification, due to ever-increasing bookkeeping duties performed by them, that they participated in the evolution of that position, and that, under the terms of the resolutions set out above, they are entitled to positions as "account clerks."

Counsel for appellants states that the only legal question left open for decision is whether the commission had the power to enact the resolution of 1939 and apply it to every civil servant of Seattle. He concedes that, had there been no reclassification as made in 1937, neither of appellants would have any standing to be regarded as bookkeepers without examination.

Respondents do not contend that appellants lost any right by taking their leaves of absence. They do claim, however, that, even though appellants did, as "clerks B-3," perform some bookkeeping duties, that, of itself, does not entitle them to the standing of "account clerk," and they must enter a competitive examination for that position and obtain a place on the eligible list.

A great deal of evidence was presented by counsel for the respective sides to either prove or disprove the fact that the work which appellants had been doing was that contemplated by the position of "account clerk," the contention of the city being that the position of "account clerk" was meant to correspond to the former position of "bookkeeper B-4," and that appellants had not been performing the type of duties which had been included among the duties of that position. Appellants, on the other hand, have strongly argued that there is a marked distinction between the posi-

tions of "bookkeeper B-4" and "account clerk." Appellants admit, however, that the requirements for the position of "intermediate clerk" are the same as those which had existed for the position of "clerk B-3."

It is the general rule, of course, that, under a civil service system such as that prevailing in the city of Seattle, namely, one which provides, in Art. XVI, § 6, of the city charter, that appointments are to be made on an examination basis, and which provides, in Art. XVI, § 9, that promotions are also to be made on an examination basis, one cannot claim a right to a position simply because he or she is performing the duties which that position entails. *State ex rel. Cooper v. Seattle,* 199 Wash. 568, 92 P. (2d) 249; *State ex rel. Warmus v. Seattle,* 2 Wn. (2d) 420, 97 P. (2d) 1095.

In view of the general rule set forth above, it becomes apparent that, in order for appellants to have any basis for their claim, it is necessary that the validity of the resolutions passed by the commission be determined, since it is only by virtue of the provisions of those resolutions that appellants can claim a right to a position for which they did not qualify by examination.

We are of the opinion that the resolutions already quoted were invalid, and that this appeal must fail for that reason. It is, of course, true that the civil service commission cannot modify or repeal provisions of the city charter or pass resolutions which are not authorized by the power by which it is created. *Allard v. Tacoma,* 176 Wash. 441, 29 P. (2d) 698; *State ex rel. Ausburn v. Seattle,* 190 Wash. 222, 67 P. (2d) 913, 111 A. L. R. 418.

Keeping this limitation in mind, we again refer to Art. XVI, §§ 6 and 9, of the city charter, which pro-

vide that appointments and promotions shall be made on an examination basis. As was said in *Larson v. Civil Service Commission,* 175 Wash. 687, 28 P. (2d) 289, the method prescribed by the charter and ordinance respecting the appointment of employees of the city is exclusive and must be observed by the civil service commission. This being the case, the commission was acting without authority when it passed resolutions whose effect was to enable persons to receive higher positions than those for which they had originally become eligible without undergoing examinations for the higher positions.

■ We do not feel that the reclassification process served to validate the resolutions, as is contended by appellants. They point to the fact that the positions underwent an evolutionary process of development during the two decades between classifications, and that the necessary reclassification of 1937 should not operate so as to demote them to the status which their position had occupied twenty years earlier. We do not regard the holding of the trial court as being as unfair as appellants urge, however. The evolutionary process in which appellants participated, whereby their duties were increased and changed to a higher type, trained them in the additional and new duties, so that, in a competitive examination for the position which includes those duties, they should be able to profit by their experience.

To hold that the charter's promotion requirements may be circumvented, by means of a reclassification of positions and the passage of resolutions to the effect that one who is performing the duties required by a newly named position shall be entitled to that position, even though the only examination he has passed is one for a lower position, provides a means whereby the very basic principles underlying the civil service sys-

tem may be destroyed, since it would be quite possible to elevate one from a very low position to a position of great importance without ever requiring him to earn his promotions by competitive examinations with other persons desirous of securing the positions.

Since we do not regard the resolutions passed by the commission as valid, we do not deem it necessary to inquire into the question of whether the position of "account clerk" was or was not actually the counterpart of the older "bookkeeper B-4," for it is conceded by appellants that the counterpart of the old position of "clerk B-3" is "intermediate clerk," and that "account clerk" is a higher position than "clerk B-3."

The judgment of the trial court is affirmed.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.