[No. 31864.   Department One.   April 10, 1952.]

THE STATE OF WASHINGTON, *on the Relation of Frances Scott, Respondent,* v. THE CITY OF TACOMA *et al., Appellants.*[1]

*Clarence M. Boyle, Dean Barline, Fred C. Dorsey, W. L. Brown, Jr.,* and *Owen P. Hughes,* for appellants.

*Copeland & Tollefson* and *Stanley R. King,* for respondent.

MALLERY, J.—The purpose of this action is to decide which of two civil service employees is entitled to the position of "Teller I" in the police court of the city of Tacoma. For simplicity we shall refer to them as the relator (respondent) and the incumbent. Their rights are dependent upon the extent to which the granting of "restrictive rights" (to be treated hereafter), by the civil service commission, will work a reclassification of the positions being held by civil service employees.

[1] Reported in 242 P. (2d) 748.

By ordinance No. 13012, the city council adopted a new or reclassification of civil service positions on February 3, 1947. At that time neither claimant was a civil service employee, and, hence, had no existing status or rights that could have been affected by it.

Later, and on June 18, 1947, the incumbent was certified to the police court as "Clerk Typist I" under the new but existing classification. Less than a year later, and without an intervening reclassification, she was granted "restricted rights" as "Teller I" in the police court on May 18, 1948. This was, as is always the case where "restricted rights" are granted, without examination or certification.

The appellants (in support of the incumbent) make the following explanation of "restricted rights" and the purpose served by them. We quote from appellants' brief:

"In order for the former employe to acquire these 'rights,' he must have been performing the duties *before* his position *was reclassified* and *after* reclassification, those same duties were substantially the same assigned and to be performed under the new classification.

"This meant simply that a *regularly certified* Civil Service employe who had held a position and performed certain duties under an old classification, would be recognized and given the right by the Civil Service Commission to the newly classified position. For all purposes, it would be the same as if he had been regularly certified to that newly named position. However, these rights were only good in the one particular department in which the employe was working at the time of the change. The rights then were restricted to one particular department and one particular job. These 'rights' were called 'restricted rights' by the Civil Service Commission." (Italics ours.)

We might well paraphrase this by saying that "restricted rights" serve to preserve, as against a reclassification, the status of an employee employed prior thereto.

It is thus readily apparent that, having no status to preserve, the grant of "restricted rights" had nothing to operate upon, because the incumbent was certified, in the first instance, *after* the last reclassification. The grant was, therefore, either a nullity or it constituted a promotion. The ap-

pellants do not contend that the "restricted rights" technique is the method provided for making promotions under civil service.

We continue the recital of the facts upon the basis that the incumbent's "restricted rights" were a nullity or, in other words, that her status *as certified* was that of "Clerk Typist I."

On March 10, 1948, the city council, by ordinance No. 13319, established two "Teller I" positions in the police court, and also added two "Clerk Typist I" positions.

On July 23, 1948, the relator was certified to the position of "Teller I" in the police court.

From then until August 26, 1950, the relator and the incumbent filled the two positions of "Teller I." On that date, one of the "Teller I" positions was discontinued, and the relator, rather than the incumbent, was laid off. This was upon the basis that the incumbent had senior rights as "Teller I" because she had served in such a capacity under her "restricted rights" longer than the relator had under her certification.

Appellants, on behalf of the incumbent, cite *Allard v. Tacoma,* 176 Wash. 441, 29 P. (2d) 698, and others, for appellants' proposition

"  .  .  .  that an incumbent of a position or office under municipal classified civil service could not be *legislated* out of that position by a mere change of the name of the position or office where the duties of the position or office remained the same." (Italics ours.)

We and the respondent readily agree that this is a correct statement of a rule of law applicable to persons whose positions have been reclassified after they acquired rights in them. It has no applicability to the incumbent. *After* the classification was made, she was certified as a "Clerk Typist I." The relator alone was certified as a "Teller I."

What the incumbent really seeks is to hold seniority rights to her promotion to "Teller I" for which she was never examined or certified under a claim of "restricted rights," as

against one certified to the position. It may be that she is doing the same work as "Teller I" that she did under her certified position as "Clerk Typist I," and at a higher salary. If so, she may be called upon to do the same work when she returns to her certified status of "Clerk Typist I." Her sole claim to the promotion and her status as "Teller I" is based upon her grant of "restricted rights" as "Teller I."

The civil service commissioners testified that the granting of "restricted rights" was incident to a change of classification or, in other words, that it implemented the rule of the *Allard* case, *supra*. No one has suggested any rule or power by which one can be promoted from existing classification to classification, except by certification after examination.

We affirm the trial court in restoring the relator to her position as "Teller I," even at the expense of returning the incumbent to her status as certified, her "restricted rights" to the contrary notwithstanding.

It may be, as appellants contend, that the duties of "Clerk Typist I" and "Teller I" are identical in this particular case. If so, the incumbent can certainly continue to perform them by dropping back to her legal certified status as "Clerk Typist I," of which there are several in the office. It is our conclusion, however, that, except in case of reclassification, the crossing of classification lines and promotions can only be accomplished in the prescribed way, and that the wrongful application of the "restricted rights" technique, where there has been no reclassification, is productive of only confusion and insecurity.

We believe this is in accord with the rule of *State ex rel. Olson v. Seattle*, 7 Wn. (2d) 379, 110 P. (2d) 159, in which we said:

"To hold that the charter's promotion requirements may be circumvented, by means of a reclassification of positions and the passage of resolutions to the effect that one who is performing the duties required by a newly named position shall be entitled to that position, even though the only examination he has passed is one for a lower position, provides a means whereby the very basic principles underlying

the civil service system may be destroyed, since it would be quite possible to elevate one from a very low position to a position of great importance without ever requiring him to earn his promotions by competitive examinations with other persons desirous of securing the positions."

The judgment is affirmed.

SCHWELLENBACH, C. J., GRADY, DONWORTH, and WEAVER, JJ., concur.

May 26, 1952. Petition for rehearing denied.