[No. 3399-6-III. Division Three. January 15, 1980.]

THE STATE OF WASHINGTON, *on the Relation of Timothy V. Swartout, Appellant,* v. CIVIL SERVICE COMMISSION OF THE CITY OF SPOKANE, *Respondent.*

*Bryan P. Harnetiaux* and *Powell & Harnetiaux,* for appellant.

*James C. Sloane, Corporation Counsel,* and *Christine Cary, Assistant,* for respondent.

McINTURFF, J.—This is an appeal from a decision of the Superior Court affirming the civil service commission's refusal to entertain the appellant's, Timothy Swartout's, request for a hearing following his discharge from the Spokane police department.

Timothy Swartout was employed by the City of Spokane as a police officer for approximately 4 1/2 years when he voluntarily resigned in July 1976. At the time of his resignation, Mr. Swartout, having attained the status of a "permanent employee," requested that his name be placed on the civil service commission's employment eligibility list. In accordance with his request, Mr. Swartout's name was placed at the bottom of the list, and as prior names were exhausted, Mr. Swartout's name advanced to the top of the list.

Mr. Swartout became eligible for reemployment as a police officer in October 1977. He accepted the position and submitted to the required physical and polygraph examinations. Before he returned to active service, Mr. Swartout learned of his civil service classification as a "probationary employee." His salary was based upon his status as an "original entrant." Thereafter, Mr. Swartout was assigned to duties and responsibilities commensurate with his experience.

Within a few months after he had returned to work, Mr. Swartout was charged with filing false activity reports. These allegations were reviewed by an informal intradepartmental body known as the Disciplinary Review Board. The Board recommended Mr. Swartout's suspension. The recommendation, however, was not binding on the chief of police, who discharged Mr. Swartout by letter dated January 27, 1978. Although the proceedings of the Disciplinary Review Board are governed by a policy of confidentiality, news of Mr. Swartout's discharge leaked to the press and was reported by the local media.

On February 3, 1978, Mr. Swartout appealed his discharge to the civil service commission. The commission declined to hear the appeal, finding it was without jurisdiction to review the discharge of a "probationary employee." Mr. Swartout then applied for a writ of review, which was granted by the Superior Court. Finding no error, the Superior Court affirmed the decision of the civil service commission and this appeal followed.

First, we must decide whether Mr. Swartout was discharged in a manner consistent with the provisions of the Charter of the City of Spokane.

Mr. Swartout contends the city charter provides a right of appeal for *all employees* of the city. This argument derives its authority from article VI, section 55, of the Charter:

> *An employee may be suspended, reduced in rank or discharged only by the city commissioner* in whose

department the employee is employed, or the city manager, if the mayor–council–manager form of government is adopted, as follows: . . . (d) Any employee may be permanently discharged from city service for cause. The person making an order of suspension, reduction in rank or permanent discharge under Subdivisions (b), (c) or (d) hereof shall forthwith file with the commission a statement of such order which shall contain the reasons therefor, and serve a copy of the order on the employee. *Within ten days after filing and service of said order, the employee may file a written appeal with the commission who shall hold a hearing thereon within ten days after filing the appeal.*

(Italics ours.) We would agree with Mr. Swartout's argument if the language producing this grant of appellate authority was not preceded by article VI, section 53, entitled "Powers and Duties of Commission." Subsections (a) and (f) contain specific provisions relating to the classification and treatment of probationary employees. They provide, in part:

The commission shall be required to advise the city council and administrative officers on all matters relating to Civil Service in the city service and shall have the power and duty:

(a) To classify all positions of the city . . . Positions heretofore or hereafter classified shall constitute the classified service and no appointments or promotions shall be made to any such positions except in the manner provided by this Article and the rules of the commission.

. . .

(f) *To provide for a period of probation not to exceed one year both on original and promotional appointments, before the appointment is made permanent, during which time, in the case of an original appointment, the probationer may be discharged,* or, in the case of a promotion, returned to a position in his former classification *by the head of the department, board or office in which employed.*

(Italics ours.)

Mr. Swartout contends these respective Charter provisions are irreconcilable. We disagree. As noted by the court in *Tacoma v. Civil Serv. Bd.,* 6 Wn. App. 600, 601,

494 P.2d 1380 (1972), the general purpose of a probationary period within the concept of the civil service structure is to give the appointing official an opportunity to determine whether the probationer is efficient and competent. In reconciling these charter provisions, a reasonable interpretation of section 53(f) is that the civil service commission is granted authority to hear appeals from any employee who has achieved permanent status, not one who is a probationary employee. This interpretation preserves the general scheme of the civil service commission program and gives meaningful significance to section 53(f), which declares that in the case of probationary employees, whether original or promotional, the head of the department, in this case, the chief of police, may discharge the probationer before the appointment is made permanent.[1] *See Tacoma v. Civil Serv. Bd., supra* at 605. To hold otherwise would negate the intent of the probationary period which is to simplify the discharge procedures for employees who are found to lack the qualifications necessary for permanent employment.

 Next, Mr. Swartout contends his discharge was without legal effect because of a conflict between the rules of the civil service commission and the provisions of the city charter.

As previously noted, the city charter directs the civil service commission to provide for a period of probation not to exceed 1 year for both original and promotional appoint-

---

[1] In construing section 53(f) the first phrase speaks of both original and promotional appointments; then it states "in the case of an original appointment, the probationer may be discharged," but there is no designation of the official authorized to discharge the probationer. Next, the section says, "In the case of a promotion, returned to a position in his former classification by the head of the department, . . ." Although it would be more clear if a comma had been placed between the words "classification" and "by", a reasonable construction of section 53(f) is that the probationer would also be discharged by the head of the department. *See* Tacoma City Charter, § 6.14(f) which is referred to in *Tacoma v. Civil Serv. Bd.,* 6 Wn. App. 600, 602–03, 494 P.2d 1380 (1972). This provision is very similar to section 53(f) in the instant case—where a comma appears between the words "classification" and "by" as we have suggested above.

ments. Article VI, section 53(f). The pertinent civil service rule provides:

> X. A permanent employee who has resigned in good standing may, within one year, submit a written request to the Commission for reemployment in his last permanent classification and may, upon approval of the Commission, have his name placed at the bottom of an open eligible list for such classification for consideration during the remaining life of said list. *Reemployment in this instance shall be considered as original entrance.*

(Italics ours.)

By virtue of his previous 4 1/2 years of service with the police department, Mr. Swartout contends he has already successfully completed the required probationary period, and had attained the status of a classified, permanent employee prior to his voluntary resignation. Thus, he should not have been classified as a probationary employee when he rejoined the police department in October 1977. Because there is no specific provision under the charter requiring a new probationary period upon reemployment, .Mr. Swartout contends civil service rule X constitutes an unlawful amendment to the city charter, or is a requirement inconsistent with the city charter. We disagree.

> The civil service commission cannot, by rule, modify or repeal a provision of the city charter or enact rules not authorized by the power creating the commission.

*State ex rel. Ausburn v. Seattle*, 190 Wash. 222, 237, 67 P.2d 913 (1937); *accord, State ex rel. Olson v. Seattle*, 7 Wn.2d 379, 384, 110 P.2d 159 (1941). Under article VI, section 53(1), the civil service commission is directed to promulgate those rules necessary to carry out the purposes of the civil service provisions of the city charter.[2] As we have already noted, the purpose of a probationary period is to

---

[2] Article VI, section 53(1):

"To make and promulgate all Civil Service rules not inconsistent with this, Article, and any amendments thereto, and to carry out and enforce the purpose of this Article, provided that the existing rules, insofar as the same may be consistent with the provisions of this Article, shall remain in full force and effect."

allow the appointing official an opportunity to evaluate the competency of the probationer before his appointment is made permanent. This principle applies equally to novice police officers, promotional appointees and those experienced police officers who voluntarily resign from the force but subsequently apply for reemployment.

The civil service commission could reasonably conclude that the time spent outside of active service may affect the officer's qualifications to once again be a permanent employee. Thus, even in the case of a police officer with prior experience, the appointing official should be given the opportunity to evaluate the officer in light of his present abilities before he is made a permanent employee. This conclusion is also consistent with the rights and interests of those police officers who have become permanent employees through continuous service with the police department. Rule X is not an amendment to the city charter, nor is it inconsistent therewith.

Next, Mr. Swartout contends the City is estopped from denying his status as a permanent "classified employee." The basis for this contention is that upon returning to the police department in October 1977, Mr. Swartout was not required to undergo police academy training and was given responsibilities normally associated with those of an experienced, permanent police officer.

For equitable estoppel to arise, there must be an admission, statement, or act inconsistent with the claim afterwards asserted. *McCollough v. Cashmere School Dist. 222*, 15 Wn. App. 730, 737, 551 P.2d 1046 (1976). The evidence supports Mr. Swartout's contention that he was regarded by his superiors as an experienced police officer. However, before he returned to the department, Mr. Swartout was informed of his probationary status. The terms of his employment, including wages, clothing allowances, qualifying physical and polygraph examinations, were consistent with his status as a probationary employee and, thus, an original entrant as required by rule X of the civil service commission.

This conclusion is also consistent with the respective functions of the civil service commission and the police department. The civil service commission administers examinations, prepares eligibility lists and determines the classification or status of employees certified to the police department. The police department cannot change the civil service commission's employee classification, but this does not preclude the department from utilizing the employee's services to the extent his abilities permit. Since Mr. Swartout had already undergone training at the police academy, there was no advantage in requiring him to undergo the same training a second time. Similarly, given his prior experience as a police officer, necessity did not demand the oral examination customarily given to novice police officers. The purpose of the oral examination is to determine a novice applicant's suitability for police work. We find no material inconsistency in the way Mr. Swartout was treated upon returning to police employment.

■ Mr. Swartout contends it was error to permit the director of the civil service commission to give his opinion regarding the interpretation and application of the city charter and implementing civil service commission rules. We disagree.

> [I]n the construction of statutes and ordinances, as well as resolutions of municipal corporations, the court should give great weight to the contemporaneous construction of an ordinance or resolution by the official charged with its enforcement.

*Cramer v. Van Parys*, 7 Wn. App. 584, 587, 500 P.2d 1255 (1972).

Next, we must decide whether Mr. Swartout was discharged in a manner consistent with the due process guaranties of our state and federal constitutions. This question raises two basic issues: (1) whether Mr. Swartout's employment status was a "property interest" protected by the due process clause; and (2) whether the reasons given for Mr. Swartout's discharge deprived him of an interest in liberty protected by the due process clause.

## PROPERTY INTEREST

■ A property interest in employment is created and defined, not by the constitution, but by rules which stem from state law.[3] In this state, there is no constitutional "property" interest in public employment.[4]

Mr. Swartout's rights stem from the civil service law. As we have seen, there is no right of appeal for a "probationary employee" under either the city charter or the rules of the civil service commission. Thus, while Mr. Swartout may entertain some abstract or unilateral expectation regarding his rights upon discharge, he did not have a "property" interest in his employment sufficient to require the civil service commission to give him a hearing upon his discharge by the chief of police.

## LIBERTY INTEREST

■ Liberty denotes not only freedom from bodily restraint, but also the right of the individual to contract and to engage in any of the common occupations of life. *Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). In the employment context, the term "liberty" encompasses two of the employee's most basic interests, namely, his good name and his prospects for future employment. Thus, if the government dismisses an employee on charges that call into question his good name, honor or integrity, notice and an opportunity to be heard are essential. *Board of Regents v. Roth, supra* at 569, and cases cited. Similarly, the government cannot, by its actions, impose a stigma or other disability upon an employee which will foreclose his freedom to pursue other

---

[3]*Bishop v. Wood,* 426 U.S. 341, 48 L. Ed. 2d 684, 690, 96 S. Ct. 2074 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701 (1972); *Giles v. Department of Social & Health Servs.,* 90 Wn.2d 457, 460, 583 P.2d 1213 (1978).

[4]*Giles v. Department of Social & Health Servs., supra* at 461 n.3; *Olson v. University of Wash.,* 89 Wn.2d 558, 564, 573 P.2d 1308 (1978); *Reynolds v. Kirkland Police Comm'n,* 62 Wn.2d 720, 384 P.2d 819 (1963); *Yantsin v. Aberdeen,* 54 Wn.2d 787, 788, 345 P.2d 178 (1959).

employment opportunities. *Board of Regents v. Roth, supra.*

Mr. Swartout contends that because the police department was responsible for public disclosure of the allegation that he had been discharged for falsifying reports, his good name and reputation have been stigmatized, thus infringing upon liberty interests protected by the due process clause. We disagree.

The proceedings of the disciplinary review board are confidential. Information regarding Mr. Swartout's discharge leaked to the press from unknown sources. A local reporter consulted the police chief, but he refused to comment except to correct the reporter regarding the recommendation of the Disciplinary Review Board—suspension rather than discharge. Public disclosure was inadvertent and there is no claim or evidence that the leak was the product of malice on the part of the police department or an intent to deprive Mr. Swartout of his constitutional rights.

More importantly, Mr. Swartout has not denied the truth of the charges leading to his dismissal. The absence of any such allegation or finding is fatal to his claim that he is entitled to a hearing under the due process clause.

> "The purpose of such notice and hearing is to provide the person an opportunity to clear his name," . . . But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and the discharged employee which has some significant bearing on the employee's reputation.

(Citations omitted.) *Codd v. Velger,* 429 U.S. 624, 627, 51 L. Ed. 2d 92, 96, 97 S. Ct. 882 (1977).

Mr. Swartout's statement in his notice of appeal, "by this appeal I dispute the charge and ask that the Commission rule that I am entitled to reinstatement." is not adequate to raise an issue as to the accuracy of the charge. He had an opportunity in superior court to deny the charges of falsifying reports, but remained silent. Because Mr. Swartout

does not challenge the accuracy of these charges, there is no suggestion or evidence that a hearing would produce the result he desires—clearing his name.

Mr. Swartout next argues he should have had an opportunity to challenge the severity of the disciplinary sanction. Again, we disagree. Since Mr. Swartout had no property interest in continued employment,

> the adequacy or even the existence of reasons for failing to rehire him present no federal constitutional question. Only if the employer *creates and disseminates a false and defamatory impression* about the employee in connection with his termination is such a hearing required.

(Citations omitted. Italics ours.) *Codd v. Velger, supra* at 628. Again, the charges are undenied.

Mr. Swartout's liberty interests receive no greater protections under the state constitution, our courts having adopted principles identical to those enunciated by the United States Supreme Court. *Giles v. Department of Social & Health Servs.,* 90 Wn.2d 457, 461, 583 P.2d 1213 (1978). The fact that Mr. Swartout may carry the stigma of having been discharged for filing false reports is not the fault of the police department. As the court observed in *Giles* at page 461:

> Nearly any reason assigned for dismissal is likely to have some negative reflection on an individual. However, not every dismissal assumes a constitutional magnitude.

The police department has taken no affirmative action to foreclose Mr. Swartout's future employment opportunities.

Judgment of the Superior Court is affirmed.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied February 5, 1980.

Review denied by Supreme Court April 3, 1980.