[No. 19373-2-I. Division One. February 1, 1988.]

DALE SAMUELS, *Appellant*, v. THE CITY OF LAKE STEVENS, ET AL, *Respondents*.

---

*Susan Rae Sampson* and *Oles, Morrison, Rinker, Stanislaw & Ashbaugh,* for appellant.

*Donald J. Lyderson, City Attorney,* for respondent City of Lake Stevens.

*H. Scott Holte, Robert L. Christie,* and *Waitt, Johnson & Martens,* for respondents Toyer, et al.

SCHOLFIELD, C.J.—Dale Samuels appeals the trial court's order granting summary judgment in favor of his former employer, the City of Lake Stevens. We affirm.

### FACTS

Samuels was the chief of police of the city of Lake Stevens. Upon hiring him, the town administrator told Samuels that he would serve a probationary period of 6 months (which is the usual period of probation for Lake Stevens police officers) and thereafter, he would become a permanent employee. Although Samuels was told that his probationary period would be 6 months, apparently this period was extended to 1 year in his case without Samuels' knowledge.

Lake Stevens Municipal Code 2.24.010, enacted in 1976, establishes a civil service system applicable to the entire police department, including the police chief. In conflict with this statute is rule 2 of the Lake Stevens Civil Service

Commission Rules and Regulations, which defines the position of police chief as an "unclassified" position, exempt from the provisions of Lake Stevens civil service rules. When Samuels was hired, the Mayor told him that the job of police chief was not a civil service position.

Also in effect when Samuels was hired as chief was city ordinance 2.20.010, which provides that the police chief serves at the pleasure of the mayor, and Lake Stevens civil service rule 8.10, which establishes a 1–year probationary period during which an employee may be removed without an investigation or a hearing.

On the evening of Friday, January 4, 1985, almost a year after Samuels was hired, the Mayor told Samuels to resign or be fired and gave him until the end of business on the following Monday to announce his decision. The Mayor told him that he had no civil service rights and refused to state any reasons or grant a hearing. Samuels had no prior warning or disciplinary record. That evening Samuels turned in his patrol car, and then on January 6, 1985, he cleaned out his desk.

The following Monday, January 7, 1985, Samuels looked for the Mayor to discuss the issue, but was unable to find him. Samuels wished to avoid being fired, so he left a letter at the Mayor's home, resigning effective January 15, 1985. That evening, the Mayor informed the town council that Samuels had resigned, and the Mayor named an interim police chief.

Samuels promptly sought counsel. On January 11, 1985, before its effective date, he withdrew his letter of resignation. The Mayor told him the letter could not be withdrawn. Samuels then requested a civil service hearing.

The Civil Service Commission met in the presence of the city attorney. They denied Samuels' request for a hearing based on the fact that Samuels had submitted a letter of resignation upon the Mayor's request.

Samuels then brought this lawsuit for wrongful discharge. The trial court granted summary judgment in favor of Lake Stevens. This appeal timely followed.

## STANDARD OF REVIEW

On review of a summary judgment, the appellate court places itself in the position of the trial court and, considering the evidence in the light most favorable to the nonmoving party, must assess whether "the pleadings, depositions . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986) (quoting CR 56(c)).

## APPLICABILITY OF LAKE STEVENS CIVIL SERVICE RULES TO SAMUELS

Samuels contends that Lake Stevens' civil service rules, which exclude the chief of police from their protection, do not substantially accomplish the purpose of RCW 41.12, Civil Service for City Police, and therefore the state civil service rules apply to him, including the 6-month probationary period provided for in the state rules. Samuels also contends that because 6 months passed following his hiring date, he became a regular employee entitled to civil service protections, including a hearing on the merits of his separation from service and the voluntariness of his resignation.

Washington law requires every city and town that employs more than two policemen to govern its police department through a civil service system. RCW 41.12.030. A town may enact its own civil service system. RCW 41.12-.010. However, if such local regulations or ordinances are adopted after 1937 and do not substantially accomplish the purpose of RCW 41.12, then the state law applies automatically. *Yantsin v. Aberdeen*, 54 Wn.2d 787, 791, 345 P.2d 178 (1959); *Reynolds v. Kirkland Police Comm'n*, 62 Wn.2d 720, 384 P.2d 819 (1963). *See also* RCW 41.12.010.

The purpose of RCW 41.12 is to provide for promotion on the basis of merit, give police officers tenure, and provide for a civil service commission to administer the system and to investigate removals, suspensions, demotions, and

discharges by the appointing power to determine whether such action was or was not made for political or religious reasons and whether it was or was not made in good faith for cause. *Reynolds v. Kirkland Police Comm'n, supra* at 725.

Although no Washington case has directly addressed the facts at bar, Washington courts have held that local variations of the state civil service system can, nevertheless, "substantially accomplish" the purpose of the act. *Bellingham Firefighters, Local 106 v. Bellingham,* 15 Wn. App. 662, 666, 551 P.2d 142 (1976); *Arbogast v. Westport,* 18 Wn. App. 4, 6–7, 567 P.2d 244 (1977).

We find that defining the police chief as an "unclassified" position is not a valid local variation of the state civil service system found in RCW 41.12 and therefore does not substantially accomplish the purpose of the state act. RCW 41.12.050 specifically provides that the civil service provisions shall cover the chief of police. To exclude him does not substantially accomplish the purpose of the statute, which seeks to provide a merit system and various protections to police officers and requires that the chief of police be included in the classified service.

■■ Although Lake Stevens' rule defining the police chief as unclassified does not, in that aspect, substantially accomplish the purpose of the state act, we see no reason why the remainder of the ordinance cannot be enforced as written, including the rule mandating a 1–year probationary period. The 1–year probationary period is a valid local variation of RCW 41.12. Although it is somewhat longer than the probationary period in RCW 41.12.100, it nevertheless substantially accomplishes the purpose of having a probationary period. *See Arbogast v. Westport, supra* at 7–8. A probationary period allows the employer to evaluate the employee's performance and enables the employer to discharge that employee if it appears during the probationary period that he is going to be unsatisfactory. A 1–year probationary period actually serves the purpose of having such a period better than a 6–month probationary period.

Also, although the Mayor initially told Samuels that the probationary period would be 6 months, the mayor has no power to waive the provisions of the civil service rules, which require a 1–year probation. *Arbogast v. Westport, supra* at 7–8.

Accordingly, we find that the 1–year probationary period applies to Samuels. Because Samuels was discharged during the 1–year probationary period, he was not entitled to an investigation or a hearing. *State ex rel. Swartout v. Civil Serv. Comm'n,* 25 Wn. App. 174, 605 P.2d 796, *cert. denied,* 449 U.S. 992 (1980).

### EFFECTIVENESS OF SAMUELS' RESIGNATION

Samuels next contends that there was a material issue of fact regarding whether his resignation was involuntary and therefore invalid. Samuels also argues that his letter of resignation was validly withdrawn before its effective date.

We find that there is no material issue of fact regarding the effectiveness of Samuels' resignation because it is clear as a matter of law that the Mayor intended to fire Samuels and that this removal occurred during the probationary period.

### APPLICABILITY OF THE CIVIL RIGHTS ACT

Samuels finally contends that he had a constitutionally protected right in his employment, and that because the commissioners denied his right to a hearing, he may bring a cause of action under 42 U.S.C. § 1983.

■ Section 1983 of the civil rights act applies when a person, acting under color of law, causes a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ." A property interest is created and defined, not by the constitution, but by rules which stem from state law. *State ex rel. Swartout v. Civil Serv. Comm'n, supra* at 182. In Washington, there is no constitutional property interest in public employment. *State ex rel. Swartout v. Civil Serv. Comm'n, supra.* More specifically, a police officer has no property right in public employment which is protected by the due process clause provisions in

our state and federal constitutions. *Yantsin v. Aberdeen, supra.* However, a permanent civil service employee who could be discharged only for cause possesses a property right in continued employment, and that property right may be deprived only by application of due process of law. *Luellen v. Aberdeen,* 20 Wn.2d 594, 148 P.2d 849 (1944). *See also Punton v. Public Safety Comm'n,* 32 Wn. App. 959, 650 P.2d 1138 (1982).

Samuels was a probationary employee at the time he was fired, and therefore we find that he did not possess a property right in continued employment and cannot maintain an action under section 1983 of the civil rights act.

Accordingly, the decision of the trial court is affirmed.

SWANSON and PEKELIS, JJ., concur.

Reconsideration denied March 15, 1988.

Review denied by Supreme Court May 31, 1988.