[No. 51142–0. En Banc. August 29, 1985.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 6, *Appellant,* v. THE SUPERINTENDENT OF PUBLIC INSTRUCTION, *Respondent.*

*Hafer, Cassidy & Price* and *John Burns*, for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Robert E. Patterson, Assistant,* for respondent.

DURHAM, J.—The Service Employees International Union, Local 6 (SEIU) appeals from the trial court's dismissal of its declaratory judgment action. SEIU contends that the trial court erred by finding that a salary increase provision of a 1982 collective bargaining agreement between SEIU and South Central School District 406 exceeded the statutorily established ceiling for school district employee salary increases. We conclude that the collective bargaining agreement complied with the applicable statutory provisions and we reverse.

In December 1980, SEIU and the District entered into a collective bargaining agreement which allowed for an average salary increase for classified employees of 13.28 percent for 1981–82. In March 1981, the State Legislature enacted RCW 28A.58.095, which prohibits school district boards of directors from granting salary increases "in excess of the amount and or percentage as may be provided for employees as set forth in the state operating appropriations act in effect at the time the compensation is payable." RCW 28A.58.095(1). The statute also provides:

> Provisions of any contract in force on March 20, 1981 which conflict with requirements of this section shall

continue in effect until contract expiration. After expiration, any new contract executed between the parties shall be consistent with this section.

RCW 28A.58.095(4).

For purposes of this appeal, RCW 28A.58.095 has three important ramifications: (1) it recognizes the validity of the December 1980 collective bargaining agreement between SEIU and the District; (2) it indicates that once the agreement expired there would be limitations on "the amount and or percentage" of future salary increases; and (3) it incorporates by reference a future piece of legislation, the state appropriations act, to establish the salary limitation.

In May 1981, 2 months after RCW 28A.58.095 went into effect, the 1981 state appropriations act was enacted. The act appropriated funds and authorized expenditures "for the operations of state agencies for the fiscal biennium beginning July 1, 1981, and ending June 30, 1983". Laws of 1981, ch. 340, p. 1612. In authorizing salary increases for classified school district employees, section 92 of the appropriations act provided in pertinent part: "Percentage increases provided under this section . . . shall not exceed the *percentages* specified in LEAP Document 2." (Italics ours.) Laws of 1981, ch. 340, § 92(4), p. 1666. LEAP Document 2 was defined in section 88 of the appropriations act to mean a computer tabulation calculating the average salaries for basic education certificated and classified staff and specifying the allowable salary increase percentages. For the District, LEAP Document 2 provided:

|  | Classified | | |
| --- | --- | --- | --- |
| School Dist. Name | 1980–81 | 1981–82 | 1982–83 |
|  | Avg. Salary | % Entl. | % Entl. |
| South Central | $14,977 | 3.30 | 7.37 |

Thus, three sources must be analyzed to determine if a salary increase for school district employees in the 1981–83 biennium complied with the statutory limitation: (1) RCW 28A.58.095, (2) the state appropriations act, and (3) LEAP Document 2.

In 1982, the collective bargaining agreement between SEIU and the District, which provided for a 13.28 percent salary increase for 1981–82, expired. The union and the school district then entered into another collective bargaining agreement which provided classified employees with a 7.37 percent salary increase for 1982–83.

The Superintendent of Public Instruction found that the District's collective bargaining agreement covering the 1982–83 school year violated the salary increase provisions established by the Legislature. The Superintendent based his finding on WAC 392–140–020(2), a rule promulgated by the Superintendent pursuant to his authority under the 1981 appropriations act. The rule interprets the appropriations act as providing that the ceiling on permissible salary increases is to be determined by using the 1980–81 average salary, specified in LEAP Document 2, as a base salary to which the percentages to the right thereof are to be applied. Accordingly, the Superintendent determined that LEAP Document 2 allowed for the following average salary levels:

| 1980–81 | 1981–82 | 1982–83 |
|---------|---------|---------|
| $14,977 | $15,471 | $16,611 |
| (base salary) | (base salary x 3.3%) | ($15,471 x 7.37%) |

The Superintendent then calculated that SEIU's collective bargaining agreements allowed for the following average salaries:

| 1980–81 | 1981–82 | 1982–83 |
|---------|---------|---------|
| $14,977 | $16,966 | $18,216 |
| (base salary) | (base salary x 13.28%) | ($16,966 x 7.37%) |

Because the 1982–83 collective bargaining agreement provided employees with average salaries in excess of $16,611, the Superintendent concluded that SEIU and the District had violated the statutory salary limitation provisions.

After receiving the Superintendent's ruling, SEIU filed a complaint for declaratory judgment in superior court. The union contended that the Superintendent misconstrued the

appropriations act by tying the allowable percentage salary increase to the average base salary.

Prior to trial, SEIU moved for summary judgment and the Superintendent, in turn, moved that the union action be dismissed pursuant to CR 12(b). The trial court denied the union's motion and, pursuant to CR 12(b), considered the Superintendent's motion as a motion for summary judgment which it granted. From these rulings, SEIU appeals.

The dispute over the validity of the 1982–83 collective bargaining agreement centers on a question of statutory construction. Specifically, we must decide if the percentage compensation increases contained in LEAP Document 2 are to be viewed independently for each school year or if the percentage compensation increases are to be tied to the average salary figure also listed in that document. Because the collective bargaining agreement covering the 1981–82 school year was entered into prior to the passage of the salary limitation law, both parties agree that the 13.28 percent increase is lawful. The 7.37 percent increase, called for in the collective bargaining agreement covering the 1982–83 school year, is also valid if each salary increase percentage listed in LEAP Document 2 is to be viewed independently. However, if the percentages listed in LEAP Document 2 are to be tied to the average base salary, then the 7.37 percent increase called for in the collective bargaining agreement violates the salary limitation law.

In construing a statute, the court's paramount duty is to ascertain and give expression to the intent of the Legislature. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 445, 536 P.2d 157 (1975). To determine the intent of the Legislature, the court "must look first to the language of the statute." *Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 110, 676 P.2d 466 (1984). "Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself." *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 121, 641 P.2d 163 (1982). In analyzing the wording, the

court must read the statute as a whole; "intent is not to be determined by a single sentence". *Human Rights Comm'n,* at 121.

■■ Here, the language of the statute is clear and unambiguous. The 1981 appropriations act provides that salary increases "shall not exceed the *percentages* specified in LEAP Document 2." (Italics ours.) Laws of 1981, ch. 340, § 92(3), p. 1666. Thus, the language of section 92 of the 1981 appropriations act does not tie the percentage salary increase to the average 1980–81 salary listed in LEAP Document 2.

Additional support for this conclusion is found in an accompanying section of the appropriations act. In section 91 of the 1981 appropriations act, the Legislature calculated the total amount of state funds that a school district would receive for classified employee compensation. Unlike section 92, section 91 did tie the percentage increases to the average salary listed in LEAP Document 2:

> (2) Total 1982–83 basic education classified compensation entitlement for a particular school district shall be the sum of the following:
>
> (a) Maintenance of classified compensation for a particular school district shall be equal to the classified staff units . . . multiplied by the *1980–81 average classified salary established in LEAP Document 2* for that district *improved by the 1981–82 percentage salary increase* . . .

(Italics ours.) Laws of 1981, ch. 340, § 91, p. 1665. "Where different language is used in the same connection in different parts of a statute, it is presumed that a different meaning was intended." *State v. Roth,* 78 Wn.2d 711, 715, 479 P.2d 55 (1971). Thus, because the Legislature tied the average base salary to the percentage in the allocation section but did not do so in the classified salary increase section, this court will presume that the Legislature did not intend to tie the average salary to the percentage in determining the allowable staff salary increases. We, therefore, construe the appropriations act as limiting 1982–83 staff salary increases for the South Central School District to

7.37 percent. Staff salary increases provided for in SEIU's contract with the school district did not exceed that percentage and, therefore, complied with statutory salary limitation provisions.

The Superintendent contends, however, that we should not rely on the plain wording of the appropriations act because RCW 28A.58.095 demonstrates the legislative intent to tie salary increases to the specific dollar amount appropriated. The Superintendent argues that the tying of RCW 28A.58.095 to the appropriations act demonstrates that the Legislature intended to tie salary increases to the total amount of funds appropriated for that purpose.

The Superintendent's contention is supported neither by the wording nor the legislative history of the statute. RCW 28A.58.095(1) states that no school district shall compensate its employees "in excess of *the amount and or percentage* as may be provided for employees as set forth in the state operating appropriations act". (Italics ours.) Although the statutory wording does tie staff salary increases to the appropriations act, the wording also demonstrates that the Legislature deferred determination of whether the salary limitation would be a dollar amount or percentage until the appropriations act was before it. This construction of RCW 28A.58.095 is supported by the statute's legislative history. In response to a point of order that would have required the proposed legislation to be referred to the Ways and Means Committee because the bill would have a fiscal impact of more than $50,000, the Speaker of the House stated:

> As I understand this bill, and having discussed it with the Chairman of the Education Committee, this is a policy statement for which no fiscal impact is determinable, but that is totally to be determined by a future piece of legislation, known as the Appropriations Bill that will be coming along later.

House Journal, 47th Legislature (1981), at 163.

Despite the wording of RCW 28A.58.095, the Superintendent maintains that the underlying history of the stat-

ute demonstrates that the Legislature intended to tie salary increases to a specific dollar amount appropriated. Because of this court's decision in *Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 585 P.2d 71 (1978), the Legislature is required to fully fund basic education. If teacher salaries were not limited to the amount appropriated by the Legislature, the State would be in violation of this court's mandate. However, even under the Superintendent's construction, RCW 28A.58.095 would not tie salaries to the dollar amount appropriated because the statute recognizes the validity of existing contracts even if the contract salary level far exceeded the state appropriation. RCW 28A.58.095(4).

Next, the Superintendent contends that if SEIU's construction of the appropriations act were adopted by this court, the act would violate article 2, section 19 of the state constitution. Article 2, section 19 provides that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title."

The Superintendent argues that if the Legislature established a salary limitation that is not tied to the dollar amount appropriated, it enacted legislation that contains two subjects. This contention is without merit.

> ■ Article 2, section 19 of our state constitution has a dual purpose: (1) to prevent "logrolling", or pushing legislation through by attaching it to other necessary or desirable legislation, and (2) to assure that the members of the legislature and the public are generally aware of what is contained in proposed new laws.

*Flanders v. Morris*, 88 Wn.2d 183, 187, 558 P.2d 769 (1977). Thus, when an appropriations act defines rights or amends existing laws, the act violates article 2, section 19. *Flanders*, at 188. The inclusion of section 92 in the appropriations act did not create the potential for logrolling or public deception. RCW 28A.58.095 clearly identified the policy of limiting future basic education staff salary increases. This policy was not altered by the appropriations act. To ensure that RCW 28A.58.095 would not have to be revised each time the Legislature changed the permissible salary increase

level, it incorporated a periodically enacted piece of legislation into RCW 28A.58.095. Indeed, we have recognized the need for such flexibility: "Clearly, greater latitude must be granted the legislature in enacting multi–subject legislation under the appropriations bill title". *Flanders*, at 188. Because section 91 did not amend existing laws or independently create rights, we uphold its constitutionality.

Finally, the Superintendent argues that any ambiguity in the construction of the salary limitation provisions should be resolved by deferring to the Superintendent's construction of these provisions.

█ Where an administrative agency is charged with administering a special field of law . . ., the agency's construction of statutory words and phrases and legislative intent should be accorded substantial weight when undergoing judicial review.

*Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981). Nonetheless, this court also recognizes the "countervailing principle that it is ultimately for the court to determine the purpose and meaning of statutes". *Overton*, at 555. Here, where the wording of the statute makes the legislative intent clear, the court should independently construe the statute because "it is emphatically the province and duty of the judicial branch to say what the law is." *Overton*, at 555.

We, therefore, reverse the trial court and remand for entry of an order granting SEIU's motion for summary judgment.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.