[Nos. 59947-5; 60093-7. En Banc. April 14, 1994.]

SOUNDGARDEN, ET AL, *Respondents*, v. KENNETH O. EIKENBERRY, *as Attorney General*, ET AL, *Appellants*, NORM MALENG, *as Prosecuting Attorney, Interested Party.*

752

*Christine O. Gregoire, Attorney General, William B. Collins, Senior Assistant,* and *Carol A. Murphy* and *John J. Samson, Assistants,* for appellants.

*Preston Thorgrimson Shidler Gates & Ellis,* by *Paul J. Lawrence* and *Floyd G. Short; Davis Wright Tremaine,* by *Daniel Waggoner* and *Debora K. Kristensen;* G. Kent Thorsted (*David E. Leibowitz,* of counsel), for respondents.

*Norm Maleng, Prosecuting Attorney,* and *Dennis C. McMahon, Senior Deputy.*

SMITH, J. — The State[1] appeals direct to this court from an order of the King County Superior Court declaring unconstitutional the "Erotic Sound Recordings" statute (House Bill 2554, Laws of 1992, ch. 5, codified as RCW 9.68.050, .060, .070 and .090, and also known as the "Erotic Music Statute") and permanently enjoining its enforcement. Respondents/ Cross Appellants, Soundgarden, et al.,[2] defend the judgment of the trial court, but appeal from its order denying attorney fees and costs.[3] We affirm the Superior Court.

STATEMENT OF FACTS

On March 20, 1992, Governor Booth Gardner signed the "Erotic Sound Recordings" statute[4] which became effective

---

[1]Appellants are collectively referred to as "the State". Former Attorney General Kenneth O. Eikenberry is also an Appellant. King County Prosecuting Attorney Norm Maleng, who was a defendant in the trial court, is listed as "an interested party" on appeal.

[2]Soundgarden is a musical group consisting of Matthew Cameron, Christopher Cornell, Hunter Benedict Shepard and Kim Thayil. They are joined by other recording artists, record stores, record companies and several individuals, including minors. Together, plaintiffs (Respondents/Cross Appellants) number over 70 individuals and entities.

[3]The appeal from the denial of attorney fees was initially brought under a separate cause number, 60093-7. On March 29, 1993, the two appeals were consolidated under number 59947-5.

[4]House Bill 2554, Laws of 1992, ch. 5, which amended Laws of 1969, 1st Ex. Sess. §§ 13, 14, 15, 17 to include the words "sound recording(s)" or "erotic sound recording" is now codified as RCW 9.68.050, .060, .070 and .090. The former version applied only to erotic visual materials such as writings, films, prints and pictures, and has never been challenged.

June 11, 1992. According to plaintiffs (Respondents/Cross Appellants here) and their supporters who filed affidavits and declarations, the statute interferes with their ability to express themselves, manage their businesses, and access ideas; and interferes with society's notion of a free marketplace of ideas and, in general, the evolution of society itself.[5] The claims made in these affidavits and declarations were not directly challenged by the State.

On June 23, 1992, plaintiffs (Respondents/Cross Appellants) filed in the King County Superior Court a complaint for declaratory judgment, claiming that the "Erotic Sound Recordings" statute (also known as the "Erotic Music Statute") is unconstitutional as a violation of, and prior restraint upon, free speech and due process under the federal and state constitutions. They also sought a permanent injunction against its enforcement and sought attorney fees and costs under 42 U.S.C. § 1988 and § 1983. Defendants (the State) responded that the law is constitutional. All parties agreed that this is a facial challenge to the statute.

The "Erotic Sound Recordings" statute has not been enforced to date. King County Prosecuting Attorney Norm Maleng, a defendant at trial (Interested Party here), has not appealed the orders of the trial court. He claims there is no evidence he has attempted to enforce, or in the future would attempt to enforce, the statute and that therefore he should not be a designated party in this action and should not be required to pay attorney fees and costs if they are awarded.[6] While Snohomish County Prosecuting Attorney Seth Dawson was named as a defendant on the Summons and Complaint, he was dismissed from the case early in the proceedings.[7]

---

[5]See Supplemental Clerk's Papers, at 31-133.

[6]Clerk's Papers, at 224-26; Brief of Interested Party Norm Maleng.

[7]Brief of Interested Party Norm Maleng n.1.

The King County Superior Court, the Honorable Mary W. Brucker, determined that the statute was void on its face for vagueness; and that it constituted a prior restraint upon speech in violation of the federal and state constitutions because it did not provide adequate notice to persons who might be prosecuted under its provisions and because it allowed a judge to decide what is fundamentally a jury question. She also determined that the bifurcated nature of the statute's application violates the due process requirement that every element of a crime must be proved beyond a reasonable doubt.[8] On October 29, 1992, Judge Brucker also granted an order permanently enjoining enforcement of the statute.[9] A written order was filed on November 20, 1992.[10]

At the hearing on November 20, 1992, it was agreed that a petition for attorney fees and costs would be filed separately. On December 17, 1992, Kenneth O. Eikenberry, as Attorney General, filed a notice of appeal to this court of the order of the trial court granting the permanent injunction and declaratory judgment. Norm Maleng, as King County Prosecuting Attorney, did not appeal that order.

On December 18, 1992, plaintiffs filed in the trial court a petition for award of attorney fees and costs under 42 U.S.C. § 1988. The State (both Kenneth O. Eikenberry and Norm Maleng) claimed the proceeding was a declaratory action under RCW 7.24 and not a civil rights complaint under 42 U.S.C. § 1983. It argued that since no attempt was ever made to enforce the "Erotic Music Statute," there is no violation of the plaintiffs' rights by an individual "under color of state law". Kenneth O. Eikenberry also asserts the definition of "individual" under § 1983 may include a county or

---

[8]*See also* RCW 9A.04.100.

[9]Verbatim Report of Proceedings of the oral ruling (Oct. 29, 1992).

[10]Verbatim Report of Proceedings of hearing (Nov. 20, 1992) and order granting permanent injunction against enforcement of Erotic Music Statute, Clerk's Papers, at 194-203.

municipal official, but under Washington law does not include the state or any state official.[11]

A hearing was held on January 22, 1993. On February 11, 1993, Judge Brucker denied attorney fees and costs, stating that the action was only for declaratory judgment under RCW 7.24 and not a civil rights complaint under 42 U.S.C. § 1983.[12] On March 1, 1993, plaintiffs (Respondents/Cross Appellants) filed a notice of appeal to this court of the order of the trial court denying attorney fees and costs.

On March 15, 1993, plaintiffs (Respondents/Cross Appellants) filed a motion to consolidate their appeal with that of the State. The appeals were consolidated on March 29, 1993. This court granted direct review of the consolidated appeals on September 1, 1993.

## QUESTIONS PRESENTED

The questions presented in this case are whether the "Erotic Sound Recordings" statute (also known as the "Erotic Music Statute," House Bill 2554, Laws of 1992, ch. 5; RCW 9.68.050, .060, .070, and .090) is unconstitutional and whether Respondents/Cross Appellants (plaintiffs in the trial court) are entitled to an award of attorney fees and costs under 42 U.S.C. § 1988.

## DISCUSSION

 There are no findings of fact in this case. A statute has been declared unconstitutional by the trial court. Under these circumstances this court reviews the case de novo.[13] "Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself."[14] In obscenity cases, "[a]lthough *Miller* [v.

---

[11]Clerk's Papers, at 213-20, 224-26, and 227-38; Supplemental Clerk's Papers, at 1-8, 11-22, 23-28.

[12]Supplemental Clerk's Papers, at 29-30.

[13]*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 80 L. Ed. 2d 502, 104 S. Ct. 1949 (1984).

[14]*Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction*, 104 Wn.2d 344, 348, 705 P.2d 776 (1985) (quoting *Human Rights Comm'n v. Cheney*

*California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973)] required state law to specify the type of sexual acts which may be obscene, state courts are allowed to construe state statutes so as to cure any facial deficiencies."[15] However, a court may not strain to interpret the statute as constitutional: a plain reading must make the interpretation reasonable.[16]

Obscenity Test for Minors: RCW 9.68.050

In 1992 the Legislature amended RCW 9.68.050, .060, .070 and .090 to include sound recordings in the list of materials which could be considered erotic if they otherwise meet the test for obscenity adjusted to apply to minors. These provisions were originally enacted in 1969[17] and were based upon several United States Supreme Court opinions which announced the test for obscenity. The obscenity test is codified as a definition of "erotic material" under RCW 9.68.050(2), which reads:

> (2) "Erotic material" means printed material, photographs, pictures, motion pictures, sound recordings, and other material the dominant theme of which taken as a whole appeals to the prurient interest of minors in sex; which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters or sadomasochistic abuse; and is utterly without redeeming social value[.]

The test for obscenity has been upheld by the United States Supreme Court as not violative of the First Amendment to the United States Constitution. In *Ginsberg v. New York*,[18] the court observed that "girlie" magazines sold to a

---

*Sch. Dist. 30*, 97 Wn.2d 118, 121, 641 P.2d 163 (1982)). *See also State v. Standifer*, 110 Wn.2d 90, 92, 750 P.2d 258 (1988).

[15]*State v. Reece*, 110 Wn.2d 766, 772, 757 P.2d 947 (1988) (citing *Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973) and *Ward v. Illinois*, 431 U.S. 767, 771, 52 L. Ed. 2d 738, 97 S. Ct. 2085 (1977)).

[16]*State v. Walter*, 66 Wn. App. 862, 870, 833 P.2d 440 (1992), *review denied*, 121 Wn.2d 1033 (1993).

[17]Laws of 1969, 1st Ex. Sess., ch. 256, §§ 13, 14, 15, 17.

[18]390 U.S. 629, 20 L. Ed. 2d 195, 88 S. Ct. 1274 (1968).

16-year-old boy were not obscene for adults under *Redrup v. New York*[19] and that the appellant merchant was not prohibited from stocking and selling them to adults. However, the court stated that obscenity is not within the area of protected speech or press, and approved the concept of "variable obscenity" which adjusts the definition of obscenity announced in its prior opinions to apply to minors.[20] The court also stated that "even where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults . . . .' "[21] The court determined that New York's three-pronged definition of obscenity adjusted for minors was not void for vagueness and affirmed conviction of the merchant.[22] The New York statutory test of obscenity provided in relevant part:

> (f) "Harmful to minors" means that quality of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it:
>
> (i) predominantly appeals to the prurient, shameful or morbid interest of minors, and
>
> (ii) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors, and
>
> (iii) is utterly without redeeming social importance for minors.[23]

■ The Washington statutory definition of "erotic material" is substantially similar to the New York statutory

---

[19]*Ginsberg*, at 634 (citing *Redrup v. New York*, 386 U.S. 767, 18 L. Ed. 2d 515, 87 S. Ct. 1414 (1967)).

[20]*Ginsberg*, at 635 (citing *Roth v. United States*, 354 U.S. 476, 485, 1 L. Ed. 2d 1498, 77 S. Ct. 1304, 1309 (1957); *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney Gen.*, 383 U.S. 413, 418, 16 L. Ed. 2d 1, 86 S. Ct. 975, 977 (1966)).

[21]*Ginsberg*, at 638 (citing *Prince v. Massachusetts*, 321 U.S. 158, 170, 88 L. Ed. 645, 64 S. Ct. 438, 444 (1944)).

[22]*Ginsberg*, at 633.

[23]N.Y. Penal Law 1909 § 484-h(1)(f)(i), (ii), (iii) as enacted by 1965 N.Y. Laws 327. The New York statute, however, also provided that the person prosecuted must have "knowledge" of the character of the material sold and the age of the minor.

definition of "obscenity". The Washington definition of "erotic material" under RCW 9.68.050 at least meets the *Ginsberg* test of a constitutionally valid definition of obscenity adjusted for minors.

■ In *Ginsberg* the United States Supreme Court slightly modified its prior definition of obscenity.[24] However, it has permitted states to adhere to the "utterly without redeeming social value" standard under their own state constitutions.[25] But this court recently declared in *State v. Reece*[26] that "if a publication meets the federal test as an obscenity, it may be banned under both the state and federal constitutions." Under *Reece*, then, there is no independent state constitutional analysis in obscenity cases in Washington.

■ Respondents/Cross Appellants claim, however, that music enjoys absolute constitutional protection and can never be subjected to the obscenity test. They are correct in noting that no state court has applied the obscenity test to a musical sound recording, and that no work of music alone has yet been held to be obscene even for minors. However, federal courts have considered whether a particular sound recording was obscene. Those courts did apply the obscenity test, but found the state had failed to prove the work was obscene in the cases before them.[27] The general rule still is

---

[24]*See Miller v. California*, 413 U.S. 15, 24-25, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973).

[25]*See Ward v. Illinois*, 431 U.S. 767, 773, 52 L. Ed. 2d 738, 97 S. Ct. 2085, 2089 (1977).

[26]110 Wn.2d 766, 776, 757 P.2d 947 (1988), *cert. denied*, 493 U.S. 812 (1989).

[27]*See Luke Records, Inc. v. Navarro*, 960 F.2d 134 (11th Cir.), *cert. denied*, ___ U.S. ___, 121 L. Ed. 2d 585, 113 S. Ct. 659 (1992), which concerned the "rap" artists "2 Live Crew" and their album "As Nasty As They Wanna Be". The court concluded the sheriff failed to prove the work was obscene. *See also Skyywalker Records, Inc. v. Navarro*, 739 F. Supp. 578 (S.D. Fla. 1990), *rev'd sub nom. Luke Records, Inc. v. Navarro, supra*, which found the sound recording was obscene under the Florida statute but that the sheriffs actions in obtaining and enforcing against a shopkeeper an ex parte order declaring the work obscene constituted a prior restraint. *See also Waller v. Osbourne*, 763 F. Supp. 1144 (M.D. Ga. 1991), *aff'd* 958 F.2d 1084, *reh'g denied*, 964 F.2d 1148 (11th Cir.), *cert. denied*, ___ U.S. ___, 121 L. Ed. 2d 245, 113 S. Ct. 325 (1992), where the trial court stated the lyrics of the music were subject to obscenity analysis, but concluded the work challenged was not obscene.

that any material which is not obscene for adults is constitutionally protected.[28]

## Procedures Under RCW 9.68.060

RCW 9.68.060 provides:

(1) When it appears that material which may be deemed erotic is being sold, distributed, or exhibited in this state, the prosecuting attorney of the county in which the sale, distribution, or exhibition is taking place may apply to the superior court for a hearing to determine the character of the material with respect to whether it is erotic material.

(2) Notice of the hearing shall immediately be served upon the dealer, distributor, or exhibitor selling or otherwise distributing or exhibiting the alleged erotic material. *The superior court shall hold a hearing not later than five days from the service of notice* to determine whether the subject matter is erotic material within the meaning of RCW 9.68.050.

(3) If the superior court rules that the subject material is erotic material, then, following such adjudication:

(a) If the subject material is written or printed, or is a sound recording, the court shall issue an order requiring that an "adults only" label be placed on the publication or sound recording, if such publication or sound recording is going to continue to be distributed. Whenever the superior court orders a publication or sound recording to have an "adults only" label placed thereon, such label shall be impressed on the front cover of all copies of such erotic publication or sound recording sold or otherwise distributed in the state of Washington. Such labels shall be in forty-eight point bold face type located in a conspicuous place on the front cover of the publication or sound recording. *All dealers and distributors are hereby prohibited from displaying erotic publications or sound recordings in their store windows, on outside newsstands on public thoroughfares, or in any other manner so as to make an erotic publication or the contents of an erotic sound recording readily accessible to minors.*

(b) If the subject material is a motion picture, the court shall issue an order requiring that such motion picture shall be labeled "adults only". The exhibitor shall prominently display a sign saying "adults only" at the place of exhibition, and any advertising of said motion picture shall contain a statement that it is for adults only. Such exhibitor shall also display a

---

[28]*See* U.S. Const. amend. 1; Const. art. 1, § 5.

sign at the place where admission tickets are sold stating that it is unlawful for minors to misrepresent their age.

*(c) Failure to comply with a court order issued under the provisions of this section shall subject the dealer, distributor, or exhibitor to contempt proceedings.*

*(d) Any person who, after the court determines material to be erotic, sells, distributes, or exhibits the erotic material to a minor shall be guilty of violating RCW 9.68.050 through 9.68.120, such violation to carry the following penalties:*

(i) For the first offense a misdemeanor and upon conviction shall be fined not more than five hundred dollars, or imprisoned in the county jail not more than six months;

(ii) For the second offense a gross misdemeanor and upon conviction shall be fined not more than one thousand dollars, or imprisoned not more than one year;

(iii) For all subsequent offenses a felony and upon conviction shall be fined not more than five thousand dollars, or imprisoned not less than one year.

(Italics ours.)

## Overbreadth

Respondents/Cross Appellants argue that not all obscenity is denied constitutional protection.[29] They contend that regulation of obscenity which impacts protected expression must be strictly analyzed by this court to determine whether it is overly broad and chills or infringes protected expression. They claim that the Court in *Ginsberg* "did not address the difficulties which arise when the government's protection of minors burdens (even indirectly) adults' access to material protected as to them", and that the State cannot, by enacting a law for the protection of minors, "prohibit an adult's access to material that is obscene for minors but not for adults."[30] Respondents/Cross Appellants claim the erotic music statute is overbroad in two ways: it directly regulates speech that is not obscene for adults, and it cre-

[29]Citing *R.A.V. v. St. Paul, Minnesota,* ____ U.S. ____, 120 L. Ed. 2d 305, 112 S. Ct. 2538, 2543 (1992).

[30]Brief of Respondents/Cross-Appellants at 20 (quoting *American Booksellers v. Webb,* 919 F.2d 1493, 1501 (11th Cir. 1990), *reh'g denied,* 930 F.2d 925, *cert. denied,* 500 U.S. 942, 114 L. Ed. 2d 479, 111 S. Ct. 2237 (1991)). *See also Butler v. Michigan,* 352 U.S. 380, 383, 1 L. Ed. 2d 412, 77 S. Ct. 524 (1957) (legislation must not "reduce the adult population . . . to reading only what is fit for children").

ates a "massive" chilling effect on speech that is not obscene at all.

■ The Court in *Ginsberg* permitted direct regulation of speech that is not obscene for adults by allowing an adjusted obscenity standard for minors. The overbreadth doctrine is predicated on the supposed danger that "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression."[31]

Respondents/Cross Appellants argue that because all regulations of material obscene to minors encompass otherwise protected speech to some degree, in order to avoid overbreadth those regulations must be the least restrictive means of furthering the government's interests in protecting minors.[32]

Respondents/Cross Appellants contend that RCW 9.68-.060(3)(a), which prohibits all dealers from displaying erotic music in their store windows, directly affects access by adults, as well as minors, and is not the least restrictive means of furthering the government's interest. They argue that in the context of a sound recording, which must be heard by a minor in order for the erotic material to be conveyed, such a visual restriction is wholly unrelated to the government's interest.

The language of RCW 9.68.060(3)(a) requires only that the erotic "content" of the sound recording not be displayed or made readily accessible to minors. The visual restriction applies only to sound recordings with erotic covers and not to those whose covers are not erotic, while the audio restriction applies to all erotic music.

Respondents/Cross Appellants also claim that because the statute subjects shopkeepers to civil contempt proceed-

---

[31]*New York v. Ferber*, 458 U.S. 747, 768, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982) (quoting *Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634, 63 L. Ed. 2d 73, 100 S. Ct 826 (1980)).

[32]Citing *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 106 L. Ed. 2d 93, 109 S. Ct. 2829 (1989).

ings and criminal prosecution, and because approximately 25 percent of all "rap" and "rock" music is sold to persons 10 to 19 years of age, it creates a widespread chilling effect or self-censorship upon the whole industry. They also claim the statute is overbroad because it interferes with the right of individuals in the industry to earn a living.[33]

Unchallenged affidavits and declarations in the record indicate that shopkeepers have already instituted policies to prevent sale to minors of even recordings which have not been adjudged to be erotic, but which might possibly be considered erotic, including requiring proof of age or simply canceling orders for the recordings from distributors or manufacturers. Those shopkeepers claim they are already experiencing loss of revenue. Artists claim they are concerned that, in order to insure that their music will not violate the statute, they must curtail their protected speech and expression or risk loss of sales because of censorship by shopkeepers or the State.[34]

The State responds that any self-censorship or other voluntary action by any party limiting its own protected speech is not the result of a prohibition in RCW 9.68.050.090. It claims the statute does not restrict adults from buying sound recordings, nor does it restrict artists from creating the recordings.

■ It is true that RCW 9.68.060 is not directed at artists. However, the otherwise lawful conduct of shopkeepers (some of whom have described their operations as "progressive") in displaying the content of materials which are not obscene to adults is directly regulated by the statute. Once it is determined that "a statute reaches constitutionally protected speech or expressive conduct," the next question is:

> whether the statute prohibits a "real and substantial" amount of protected conduct in contrast to the statute's plainly legitimate sweep. Even if a statute is "substantially overbroad", it will not be overturned unless the court is unable to place a sufficiently limiting construction upon the statute. If possible,

---

[33]Brief of Respondents/Cross Appellants, at 22-24.

[34]See Supplemental Clerk's Papers, at 31-133.

a statute must be interpreted in a manner that upholds its constitutionality.[35]

(Citations omitted.)

Chilling of free speech is the product of state action, which exists if "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State."[36] This court has concluded that the Washington Constitution is less tolerant of overly broad restrictions on speech than the Federal First Amendment and that "regulations that sweep too broadly chill protected speech prior to publication, and thus may rise to the level of a prior restraint", while the United States Supreme Court "considers the overbreadth doctrine 'strong medicine', employing it only as a 'last resort.' "[37]

Respondents/Cross Appellants have not addressed the six nonexclusive analytical factors under *State v. Gunwall*.[38] We need not give consideration to those factors here.

### Prior Restraints on Speech

Respondents/Cross Appellants also claim the lack of timely and adequate notice for the initial hearing to determine whether a particular sound recording is erotic also constitutes a prior restraint on speech because insufficient notice will produce self-censorship and a chilling effect upon the music industry and because the language of the statute permits enforcement before any publication to minors.

██ ██ A prior restraint is an administrative or judicial order forbidding communications prior to their occurrence. Simply stated, a prior restraint prohibits future speech, as opposed to punishing past speech.[39] "[A] prior restraint may

---

[35]*State v. Halstien*, 122 Wn.2d 109, 122-23, 857 P.2d 270 (1993).

[36]*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1982).

[37]*O'Day v. King Cy.*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988) (citing *State v. Coe*, 101 Wn.2d 364, 373-75, 679 P.2d 353 (1984); *New York v. Ferber*, 458 U.S. 747, 769, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982)).

[38]106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

[39]*Alexander v. United States*, ___ U.S. ___, 125 L. Ed. 2d 441, 113 S. Ct. 2766, 2768 (1993).

be struck down even though the particular expression involved could validly be restricted through subsequent criminal punishment."[40] "Although prior restraints are presumptively unconstitutional, . . . not all prior restraints are prohibited."[41] This court has "expressly rejected an absolute bar against prior restraints on speech which is *not* constitutionally protected."[42] But, speech which is not obscene for adults is clearly constitutionally protected speech.

Respondents/Cross Appellants claim the language of RCW 9.68.060(1) permits a prosecuting attorney to request and obtain an initial hearing to determine whether a particular recording is erotic and to apply legal restrictions before the sound recording is played or sold to minors. That subsection provides:

> (1) When it appears that material which may be deemed erotic is being sold, distributed, or exhibited in this state, the prosecuting attorney of the county in which the sale, distribution, or exhibition is taking place may apply to the superior court for a hearing to determine the character of the material with respect to whether it is erotic material.

Respondents/Cross Appellants correctly point out that under the plain language of the statute the sale or distribution need only be to retailers or distributors and need not be to minors for the prosecuting attorney to take action, in effect censoring a recording prior to its publication. Even if that language does constitute a prior restraint, it would be valid at least as applied to minors because the statute regulates material which is obscene (erotic) to minors,[43] and prior restraints of obscenity are constitutionally permitted when minors are affected.[44]

---

[40]Gerald Gunther, *Constitutional Law* 1203 (12th ed. 1991).

[41]*State v. Coe*, 101 Wn.2d 364, 372-73, 679 P.2d 353 (1984), noting that "Federal law has long recognized the validity of some prior restraints on constitutionally unprotected speech, such as obscenity and incitement to acts of violence, and on speech that directly threatens military security."

[42]*State v. Coe, supra* at 375.

[43]*See Ginsberg v. New York*, 390 U.S. at 635.

[44]*See State v. Coe, supra* at 375.

Respondents/Cross Appellants also claim that lack of notice of the initial hearing to interested parties constitutes an impermissible prior restraint because all dealers and distributors are subject to contempt proceedings for violating an injunction against display and sale to minors and for not affixing an "adults only" label, even if they were not a party in the initial hearing and even if they had no knowledge of the injunction. They correctly argue that RCW 9.68.060(3)(a) prohibits all dealers and distributors from selling nonobscene and otherwise constitutionally protected recordings even to adults unless they put an "adults only" label on a recording which they are not aware has been adjudged to be "erotic".[45]

The State argues that the labeling requirement does not attach until after the initial hearing, and that, therefore, it does not constitute a prior restraint. However, this is not a good argument. The present language of RCW 9.68.060(1) constitutes a possibly valid prior restraint as it applies to minors. As Respondents/Cross Appellants correctly argue, though, the statute enjoins sale of nonobscene (nonerotic) materials to adults unless there is a warning label which only the parties in the initial hearing know must be placed on the recording. The State argues that rather than declaring the statute a prior restraint, this court could limit it so that contempt proceedings would apply only to dealers and distributors who were parties in the initial hearing. We do not accept that invitation to engage in judicial legislation.

Respondents/Cross Appellants claim the statute, by requiring the "adults only" label, denies recording artists and merchants their right not to speak and thus constitutes a prior restraint. In *Wooley v. Maynard,*[46] the United States

---

[45]*See State v. Coe, supra* at 372-78, where we concluded that a court order enjoining a radio station from broadcasting legally obtained tape recordings after their contents were admitted into evidence in a solicitation of murder trial was an unconstitutional prior restraint. *See also Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 713, 75 L. Ed. 2d 1357, 51 S. Ct. 625 (1931); *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976).

[46]430 U.S. 705, 714, 51 L. Ed. 2d 752, 97 S. Ct. 1428 (1977); *see also Pacific Gas & Elec. Co. v. Public Utils. Comm'n,* 475 U.S. 1, 9-18, 89 L. Ed. 2d 1, 106 S. Ct. 903

Supreme Court stated that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." In that case the court concluded that a New Hampshire law requiring all automobile license plates to carry the state motto "Live Free or Die" was an unconstitutional prior restraint because it compelled speech. The court stated that the message carried an idea which to some might be "morally objectionable". The court emphasized that the motto was required to be placed on an automobile, "which is readily associated with its operator", and distinguished that situation from printing the motto "In God We Trust" on United States currency, which the court noted "is passed from hand to hand" and "need not be displayed to the public. The bearer of currency is thus not required to publicly advertise the national motto."[47] The court discussed "whether the State's countervailing interest is sufficiently compelling to justify requiring appellees to display the state motto on their license plates." It concluded that the State's claimed interests, even if legitimate and substantial, "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."[48] The Court concluded that New Hampshire could not require automobile owners to display the state motto on their license plates.

Respondents/Cross Appellants argue that Washington's erotic music statute is even worse than the unconstitutional automobile license motto statute in *Wooley* because it "imposes its message on particular speakers, rather than on all citizens of the state, thereby making it more probable that the speaker will be understood to endorse that message and stigmatizing a work and its artist and distri-

---

(1986); *Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 271, 654 P.2d 673 (1982), *aff'd*, 467 U.S. 20 (1984).

[47] *Wooley*, at 717 n.15.

[48] *Wooley*, at 716.

butors as too 'dirty' for minors".[49] They also argue that the Washington statute compels a "state-mandated message" by threat of civil contempt and criminal penalties and constitutes a "system of prior restraint".

The State argues that no court has ever concluded that a labeling requirement for a product is unconstitutional. It argues that the labeling requirement here is no different from one for a dangerous product and that the Legislature is entitled to protect citizens from harmful materials. It also argues the label "adults only" simply designates to whom a sound recording may be sold and does not counter the message in that recording.

Actually both arguments are plausible under *Wooley*. However, the State of New Hampshire had no compelling reason for requiring the state motto to be placed on automobile license plates. In this case, the State of Washington still has a strong and legitimate interest in protecting minors.[50] But that protection can only be provided by constitutional means.

## Due Process

■ Due process at a minimum requires notice and an opportunity to be heard.[51] "Generally, in looking at the degree of process that will be afforded in a particular case, the court balances the following interests: (1) the private interest to be protected; (2) the risk of erroneous deprivation of that interest by the government's procedures; and (3) the government's interest in maintaining the procedures."[52]

■ Respondents/Cross Appellants claim the two-stage procedure of RCW 9.68.060 on its face denies due process

---

[49]Brief of Respondents/Cross Appellants, at 29; Supplemental Clerk's Papers, at 41.

[50]*See Ginsberg v. New York*, 390 U.S. at 638.

[51]*See Watson v. Washington Preferred Life Ins. Co.*, 81 Wn.2d 403, 408, 502 P.2d 1016 (1972); *see also Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974).

[52]*Morris v. Blaker*, 118 Wn.2d 133, 144-45, 821 P.2d 482 (1992) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)).

because not all interested parties are given timely notice of the initial hearing to determine whether a sound recording is erotic nor adequate notice concerning which recordings have been adjudged to be erotic. They also claim the statute denies the right to a jury trial and violates RCW 9A.04.100, which requires that each element of a crime be proved beyond a reasonable doubt.

Respondents/Cross Appellants argue that 5 days' notice to a single seller or distributor of an alleged "erotic" sound recording does not provide sufficient time for adequate legal preparation to defend the nature of the questioned sound recording. They argue the language of the statute does not provide for any notice to the artists, producers and manufacturers whose livelihood will be substantially affected.[53] They also argue that, because the labeling requirement and the contempt proceedings for failing to label a sound recording apply to all dealers and distributors in the entire state of Washington (and not merely to the parties in the initial hearing), the hearing does not provide adequate notice to all interested parties.

The State claims the two-stage proceeding is tantamount to a probable cause hearing and a later prosecution. It claims, however, that since the initial hearing to determine whether a sound recording is erotic is a civil proceeding, there is no right to a jury in that proceeding. It argues that the initial hearing does not affect the interests of the artists, producers or manufacturers because none of them is subject to contempt proceedings for failure to comply with the injunction against sale and display without a label. It claims this argument is supported by the language of the statute, RCW 9.68.060(3)(c), which provides that "[f]ailure to comply with a court order issued under the provisions of this section shall subject the dealer, distributor, or exhibitor

---

[53]*See Mahoney v. Sailors' Union,* 45 Wn.2d 453, 461-62, 275 P.2d 440 (1954) (right to earn livelihood is protected property right), *cert. denied,* 349 U.S. 915 (1955); *State ex rel. Swartout v. Civil Serv. Comm'n,* 25 Wn. App. 174, 182, 605 P.2d 796 ("right of the individual to contract and to engage in any of the common occupations of life" is protected liberty right), *review denied,* 93 Wn.2d 1021, *cert. denied,* 449 U.S. 992 (1980).

to contempt proceedings". The State argues that use of the word "the" instead of the word "a" immediately before the singular "dealer, distributor, or exhibitor" makes it clear that artists, producers or manufacturers who are not also "the dealer, distributor, or exhibitor" who was a party in the initial hearing are not subject to contempt proceedings for displaying contents of and not labeling erotic sound recordings. It concludes that therefore artists, producers and manufacturers are not being deprived of a constitutionally protected liberty or property interest in the initial hearing and thus have no right to notice of it.

The State is correct in asserting that RCW 9.68.060(3)(c) does not mention artists, producers or manufacturers. But it argues that if they are not also dealers or distributors, they are not subject to civil contempt or criminal prosecution for selling, distributing, or exhibiting "erotic" materials to minors. We do not accept this reasoning.

Respondents/Cross Appellants also claim that 5 days' notice, whether to a single dealer or distributor under the statute or even to artists, producers or manufacturers, is plainly not sufficient for preparation of an adequate defense at the initial hearing.[54] They point out that a vast effort is required to defend the character of a sound recording in the initial hearing. They claim, for example, that many expert witnesses, legal briefs and depositions were required to defend against an adjudication of obscenity the sound recording "As Nasty As They Wanna Be" by the "rap" group "2 Live Crew", in *Skyywalker Records, Inc. v. Navarro*[55] and in *Luke Records v. Navarro*.[56] They argue that any shop-

---

[54]*See Olympic Forest Prods. Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 422, 511 P.2d 1002 (1973) (due process hearing "must be granted at a meaningful time and in a meaningful manner"); *see also Cuddy v. Department of Pub. Assistance*, 74 Wn.2d 17, 19, 442 P.2d 617 (1968) (constitutional elements of due process and "fair hearing" include "a reasonable time for preparation of one's case").

[55]739 F. Supp. 578 (S.D. Fla. 1990), *rev'd sub nom. Luke Records v. Navarro*, 960 F.2d 134 (11th Cir.), *cert. denied,* ___ U.S. ___, 121 L. Ed. 2d 585, 113 S. Ct. 659 (1992).

[56]960 F.2d 134 (11th Cir.), *cert. denied,* ___ U.S. ___, 121 L. Ed. 2d 585, 113 S. Ct. 659 (1992).

keepers given notice of the initial hearing under RCW 9.68.060 would be hard pressed to defend, and probably would not be interested in seriously defending, a particular recording because it would be only one of many items in their shops.

The State claims Washington courts have concluded in other contexts that 5 days' notice before a hearing is sufficient time for preparation.[57] However, the cases cited by the State are distinguishable from this one because those hearings involved primarily factual determinations by nonjudicial boards; and in neither case was there a possibility of civil contempt or criminal prosecution for violation of determinations by the nonjudicial boards. Under the statute in this case, an adjudication of "erotic" is primarily, if not exclusively, a legal determination requiring familiarity with First Amendment law and may eventually result in civil contempt and criminal sanctions. Only 5 days' notice prior to the initial hearing in most instances would not provide sufficient time for preparation of an adequate defense.

Respondents/Cross Appellants also point out that the statute provides that "any person" may be subject to criminal prosecution "after the court determines material to be erotic" regardless whether any of those persons were parties in the initial hearing or had notice that a particular sound recording had been adjudged to be "erotic". They cite the trial court finding that the statute is vague on its face because "there is no way for citizens or the persons affected by this law to know what the law is — *i.e.*, that materials have been determined to be erotic — or how to comply with it."[58]

Following *Ginsberg v. New York, supra,* the definition of "erotic materials" under RCW 9.68.050 provides sufficient and clear notice of what kind of material, if sold or distributed to minors, may subject the vendor to criminal pros-

---

[57]Citing *Plumbers & Steamfitters Union Local 598 v. WPPSS,* 44 Wn. App. 906, 724 P.2d 1030 (1986), *review denied,* 107 Wn.2d 1021, *cert. denied,* 482 U.S. 905 (1987) and *Cuddy v. Department of Pub. Assistance,* 74 Wn.2d 17, 442 P.2d 617 (1968).

[58]Order Granting Permanent Injunction; Clerk's Papers, at 199.

ecution. In *Ginsberg*, the United States Supreme Court upheld a New York statute with a similar definition of the kinds of material which were "harmful to minors" against a vagueness attack, stating that the definition "gives '. . . adequate notice of what is prohibited' and does not offend the requirements of due process."[59] However, the New York statute in *Ginsberg* also required "knowledge" of the character of the material and of the age of the minor before a person could be convicted.[60] The Washington statute does not require knowledge of the character of the material on the part of the seller, distributor, or exhibitor before subjecting any of them to criminal prosecution. This is a violation of due process.

The State claims a shopkeeper who has perused the sound recordings before selling them will have a good idea which ones cannot be sold to minors under the statute, even without notice of the initial hearing and without notice concerning which recordings have been adjudged to be "erotic". Respondents/Cross Appellants counter that the State's assumption that retailers can peruse every sound recording they purchase and sell is "directly contradicted by the undisputed factual record".[61]

It is true that under the statute no prosecution can take place until after material has been determined by the court to be "erotic".[62] But only one dealer or distributor is notified of the initial hearing.[63] Yet that initial determination by the court applies prospectively and is binding upon all dealers and distributors in the entire state of Washington.[64] That

---

[59]*Ginsberg*, 390 U.S. at 643.

[60]*See Ginsberg*, 390 U.S. at 646.

[61]Citing Clerk's Papers, at 126-29.

[62]*See* RCW 9.68.060(3)(d).

[63]*See* RCW 9.68.060(2).

[64]*See* RCW 9.68.060(3)(a).

determination thus becomes state-wide legislation which affects the rights of nonparties in violation of due process.[65]

██ Respondents/Cross Appellants claim the statute does not prohibit the State from using the initial judicial determination of "erotic" in a later criminal prosecution, which would be·a violation of both RCW 9A.04.100 and of due process under *McKinney v. Alabama.*[66] They correctly argue that in a criminal prosecution every element of the crime must be proved beyond a reasonable doubt.[67] They also correctly point out that under the statute the initial judicial determination of "erotic material" might be used to withdraw the determination of erotic content from a jury in a subsequent trial for sale of erotic material to minors. RCW 9.68.060(3)(d) states in part that "[a]ny person who, *after the court determines material to be erotic,* sells, distributes, or exhibits the erotic material to a minor shall be guilty of violating RCW 9.68.050 through 9.68.120 . . ." with penalties for violation provided. (Italics ours.)

The State counters that this language does not actually require withdrawal from a jury of the issue whether the material sold was erotic. It agrees with Respondents/Cross Appellants that that would be in violation of RCW 9A.04.100 and would represent a significant change in the allocation of burdens of proof. It argues, however, that the Legislature cannot be presumed to have intended such a profound change without specifically addressing it. Rather,

---

[65]*See Mahoney v. Sailors' Union,* 45 Wn.2d 453, 461-62, 275 P.2d 440 (1954) (right to earn livelihood is protected property right), *cert. denied,* 349 U.S. 915 (1955); *State ex rel. Swartout v. Civil Serv. Comm'n,* 25 Wn. App. 174, 182, 605 P.2d 796 ("right of the individual to contract and to engage in any of the common occupations of life" is protected liberty right), *review denied,* 93 Wn.2d 1021, *cert. denied,* 449 U.S. 992 (1980). *See also Watson v. Washington Preferred Life Ins. Co.,* 81 Wn.2d 403, 408, 502 P.2d 1016 (1972); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974) (due process at a minimum requires notice and an opportunity to be heard).

[66]424 U.S. 669, 47 L. Ed. 2d 387, 96 S. Ct. 1189 (1976).

[67]*See* RCW 9A.04.100 ("No person may be convicted of a crime unless each element of such crime is proved by competent evidence beyond a reasonable doubt.").

it claims the issue whether material is erotic must be submitted to the jury, along with the other issues, for a proper conviction. This is a specious argument.

Respondents/Cross Appellants argue that a scheme which purports to allow a prior civil determination of erotic character of material to foreclose the issue from a jury at a subsequent criminal trial for sale of that material violates due process under *McKinney* by depriving the defendant of the opportunity to dispute the charge. The United States Supreme Court in *McKinney* vacated a conviction for sale of material which had been declared obscene in a prior civil proceeding because the defendant was not a party to the civil proceeding and had not been "afforded the opportunity to litigate in some forum the issue of . . . obscenity before he . . . [was] convicted of selling obscene material."[68]

The statutory scheme in Washington's "Erotic Music Statute" does not measure up to the due process requirement of *McKinney*.

## Jury Trial

Respondents/Cross Appellants claim the statutory scheme on its face violates the right to a trial by jury under the Washington Constitution because the issue of whether something is erotic is a jury issue, but under the statute it is decided conclusively by a single judge at the initial hearing. They argue that because the statutory scheme withdraws from the jury, at the criminal trial, the issue whether the material sold is erotic, the initial hearing is the only forum for litigating that issue. They further argue that even as early as 1886 the anti-obscenity law of the Washington Territory provided that "[t]he jury in all prosecutions, under this act, shall be the sole and exclusive judges, as to whether or not the matter circulated is obscene or indecent."[69] They contend that article 1, section 21 of the Washington Constitution, which provides that "[t]he right of trial

---

[68]*McKinney*, at 677.

[69]Brief of Respondents/Cross-Appellants, at 41-42 (citing Laws of 1885, p. 123).

by jury shall remain inviolate," must be interpreted as it would have been on the date of its ratification. They conclude that under the state constitution a jury is required at the initial hearing to determine whether a particular sound recording is erotic.

■ The State counters that the initial hearing is civil, not criminal, and that there is no right to a jury trial in civil cases under our state constitution. It argues that the whole issue would be re-litigated before a jury in any subsequent criminal prosecution. It further argues that the initial hearing is purely equitable in nature and, as such, does not require a jury trial; and specifically that juries are not required in civil proceedings to determine whether material is obscene. While the State is correct that civil proceedings to determine whether material is obscene do not require juries,[70] under this statutory scheme the initial hearing is not merely a civil proceeding since persons (parties and non-parties) are subject to criminal prosecution for violating the "civil" order of the court. Under the federal and our state constitution defendants in criminal prosecutions are entitled to jury trials. Under *McKinney v. Alabama, supra,* a defendant must be afforded an opportunity to litigate the issue of obscenity or a determination of "erotic,"[71] which would not occur if that issue is already determined in a civil proceeding prior to a criminal charge.

### Attorney Fees

■ Respondents/Cross Appellants claim they are entitled to attorney fees under 42 U.S.C. § 1988(b) for vindicating their civil rights under 42 U.S.C § 1983. They argue that they clearly brought this declaratory judgment action under both § 1983 (violation of civil rights under color of law) and RCW 7.24 (Uniform Declaratory Judgments Act). They argue that they prevailed in the trial court, as

---

[70]See *Alexander v. Virginia,* 413 U.S. 836, 37 L. Ed. 2d 993, 93 S. Ct. 2803 (1973); *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325 (1957).

[71]*McKinney,* 424 U.S. at 676.

required by § 1988, and that the State has not demonstrated "special circumstances" to make the award of attorney fees unjust.[72] They quote *Herrington v. County of Sonoma*,[73] which stated that "a court's discretion to deny fees under § 1988 is very narrow and . . . ' "fee awards should be the rule rather than the exception." ' " They also ask this court for attorney fees and costs on appeal.

The State counters that although the complaint does mention § 1983, the action was in fact brought only under RCW 7.24. It is not disputed that the State of Washington has not consented to being sued in state court under § 1983,[74] but a state official acting in an official capacity is not exempt from such an action.[75] However, § 1983 requires infringement of a person's civil rights before a cause of action accrues.[76] It is undisputed that in this case neither Kenneth O. Eikenberry nor Norm Maleng, individually or in their official capacity, has prosecuted or attempted to prosecute anyone under the "Erotic Music Statute," RCW 9.68.050, .060, .070 and .090.[77] However, RCW 7.24.100 provides that "[i]n any proceeding under this chapter,[78] the

---

[72]*See Hensley v. Eckerhart*, 461 U.S. 424, 429, 76 L. Ed. 2d 40, 48, 103 S. Ct. 1933, 1937 (1983).

[73]883 F.2d 739, 743 (9th Cir. 1989) (quoting *Ackerly Communications, Inc. v. Salem*, 752 F.2d 1394, 1396 (7th Cir. 1985)); *see also Duranceau v. Tacoma*, 37 Wn. App. 846, 849-50, 684 P.2d 1311 (1984).

[74]*See Rains v. State*, 100 Wn.2d 660, 666, 674 P.2d 165 (1983); *Edgar v. State*, 92 Wn.2d 217, 222, 595 P.2d 534 (1979), *cert. denied*, 444 U.S. 1077 (1980).

[75]*Monell v. Department of Social Servs.*, 436 U.S. 658, 707, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) (Powell, J., concurring).

[76]*See* 42 U.S.C. § 1983. *See also Collier v. Tacoma*, 121 Wn.2d 737, 854 P.2d 1046 (1993); *Rains v. State*, 100 Wn.2d 660, 674 P.2d 165 (1983); *Jacobsen v. Seattle*, 98 Wn.2d 668, 658 P.2d 653 (1983); *Duranceau v. Tacoma*, 37 Wn. App. 846, 684 P.2d 1311 (1984); *Ryder v. Port of Seattle*, 50 Wn. App. 144, 748 P.2d 243 (1987). In every case a governmental entity or official had sought to enforce a statute, ordinance or policy prior to being sued under 42 U.S.C. § 1983 for violation of civil rights under color of law.

[77]Laws of 1992, ch. 5.

[78]"[T]his chapter" is RCW 7.24, "Uniform Declaratory Judgments Act".

court may make such award of costs as may seem equitable and just". But the term "costs" does not include "attorney fees".[79] The trial court was correct in denying attorney fees.

### SUMMARY AND CONCLUSIONS

It is clear under *Ginsberg v. New York, supra,* that the constitution permits the Legislature to regulate speech it considers harmful to minors by prohibiting sale to minors of material which is obscene or defined as erotic, based upon contemporary community standards. The definition of "erotic material" under RCW 9.68.050 conforms to the definition of obscenity applied to minors based on contemporary community standards and is, therefore, not void for vagueness.

However, it is also clear under *McKinney v. Alabama, supra,* that a two-stage procedure which imposes consequences from a nonjury civil proceeding upon a defendant at a subsequent criminal proceeding, when that defendant was not a party in the civil proceeding and is deprived of the opportunity to litigate certain issues, violates constitutional due process. RCW 9.68.060 provides for an initial hearing to determine whether a particular thing is "erotic material", (a) brought by a county prosecuting attorney when it appears that material which could be erotic is being distributed in the county (even if not specifically to minors), (b) for which a single dealer or distributor is given 5 days' notice. The court at that hearing may declare the material "erotic", order an "adults only" label placed on all copies of it statewide, and enjoin the sale, distribution, or exhibition of the "erotic contents" of the material to minors throughout the state of Washington. Violation of the order of the court subjects all dealers and distributors to civil contempt proceedings, and to criminal proceedings for sale, distribution, or exhibition to minors of the "erotic material".

---

[79]*See Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 541, 585 P.2d 71 (1978) (As used in RCW 7.24.100 " '[t]he term "costs" is synonymous with the term "expense." Costs are allowances to a party for the expense incurred in prosecuting or defending a suit, and the word "costs," . . . does not include counsel fees.' "); *Rocky Mt. Fire & Cas. Co. v. Rose,* 62 Wn.2d 896, 889-900, 385 P.2d 45, 1 A.L.R.3d 876 (1963).

The procedures under RCW 9.68.060 are unconstitutional. The statute constitutes prior restraint upon protected speech as applied to adults. It is overbroad because it reaches conduct which is constitutionally protected. It violates due process by not providing sufficient time for preparation of an adequate defense at the initial hearing. It violates due process because all dealers and distributors are subject to civil contempt proceedings for violation of an injunction even though they may not have been parties in the initial hearing and even though they may not have notice of the court's determination that a material is erotic. It further violates due process by imposing criminal penalties without providing sufficient notice of which materials have been adjudged to be "erotic", and by not providing that a defendant must have "knowledge" that materials sold are erotic. It also violates due process, RCW 9A.04.100, and the right to a trial by jury in criminal proceedings by allowing the determination whether material sold is "erotic" to be made at the initial civil hearing and presented as a judicial fact to a jury in a subsequent criminal proceeding.

Respondents/Cross Appellants are not entitled to attorney fees under 42 U.S.C. § 1988 for violation by a public official of their civil rights under color of law under § 1983 because the public officials named in this case have not attempted to enforce the "Erotic Music Statute". In an action for declaratory judgment under RCW 7.24.100, "the court may make such award of costs as may seem equitable and just," but "costs" do not include "attorney fees".

We affirm the judgment of the King County Superior Court which declared the "Erotic Sound Recordings" statute, RCW 9.68.050, .060, .070 and .090, unconstitutional. We also affirm the order denying attorney fees and costs.

UTTER, DOLLIVER, GUY, JOHNSON, and MADSEN, JJ., concur.

DURHAM, J., concurs in the result.

ANDERSEN, C.J. (concurring) — I concur in the result of the majority opinion. I write separately to note that the

majority opinion, while ostensibly declining to engage in state constitutional analysis, appears in several places to do so. As the majority opinion notes, the parties have not addressed the factors enunciated in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Majority opinion, at 764. Under well-established precedent of this court, we will not engage in a state constitutional analysis when the party invoking the Washington State Constitution has failed to brief the *Gunwall* factors. *E.g.*, *Collier v. Tacoma*, 121 Wn.2d 737, 763-66, 854 P.2d 1046 (1993) (Durham, J., concurring); *State v. Wethered*, 110 Wn.2d 466, 472-73, 755 P.2d 797 (1988); *State v. Rodriquez*, 65 Wn. App. 409, 414 n.1, 828 P.2d 636, *review denied*, 119 Wn.2d 1019 (1992). I, therefore, do not agree with any state constitutional discussion in the majority opinion. *See, e.g.*, majority opinion at 750-60 n.28, 764, 774-75.

BRACHTENBACH, J., concurs with ANDERSEN, C.J.

Reconsideration denied May 24, 1994.