# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

             Respondent,

    v.

RICARDO LIARD BRUNO,

             Appellant.

No. 74647-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 6, 2017

TRICKEY, A.C.J. — A jury convicted Ricardo Bruno of second degree rape. The trial court imposed an exceptional sentence along with several community custody conditions. On appeal, Bruno argues that the trial court erred when it imposed an exceptional sentence based on an inaccurate offender score and aggravating factors not submitted to the jury. We agree, vacate the judgment and sentence, and remand for resentencing with an offender score of one and with consideration of the sentencing enhancement that the jury found.

Bruno also argues that the trial court erred by imposing several community custody conditions that are unconstitutionally vague or not crime-related. We agree in part, and remand with instructions to (1) strike community custody condition 7 as not crime-related, (2) conduct additional fact-finding in support of or strike the language of community custody condition 11 related to sexually explicit material as defined by RCW 9.68.130, and (3) strike the language "and or any places where minors congregate"[1] in community custody condition 18 as unconstitutionally vague.

---

[1] Clerk's Papers (CP) at 62.

## FACTS

Y.H. was born in 1997. Prior to 2014, Y.H. lived with her mother, two siblings, and her stepfather Bruno in Georgia. When Y.H. was 12 years old, Bruno entered Y.H.'s room and raped her. Bruno raped Y.H. periodically for the following four to five years. The rapes always occurred at night in Y.H.'s bedroom.

In 2014, the family moved to Renton, Washington. On August 19, 2014, Bruno entered Y.H.'s bedroom while she was asleep and forcibly performed an act of oral sex on Y.H. and then vaginally raped her. On August 20, 2014, Y.H. told a friend and the friend's mother that Bruno had been raping her. The friend's mother called Y.H.'s mother, who called law enforcement.

The State charged Bruno by amended information with rape in the second degree as a crime of domestic violence because his actions were against a family or household member. The State alleged one aggravating factor, that his offense was part of "an ongoing pattern of psychological, physical or sexual abuse of the same victim . . . manifested by multiple incidents over a prolonged period of time."[2]

The jury found Bruno guilty of rape in the second degree. The jury found that Bruno and Y.H. were members of the same family or household prior to or at the time the crime was committed, and therefore that the crime was an aggravated domestic violence offense.

Prior to sentencing, the State argued that Bruno had an offender score of two based on a prior conviction of robbery in Georgia. The State contended that Bruno's out-of-state robbery conviction was legally comparable with its Washington counterpart and,

---

[2] CP at 11.

therefore, merited two felony points. The State's argument was based on legal similarity alone because it "was not able to obtain any factual documents" from Georgia.[3]

The trial court calculated Bruno's offender score as two, based on Bruno's prior conviction of robbery in Georgia. It determined that his standard range sentence was 95 to 125 months. At Bruno's sentencing hearing, the trial court stated that other aggravating factors applied, in addition to Bruno's offense involving domestic violence that was part of an ongoing pattern of abuse of the same victim over a prolonged period of time. The trial court stated that Bruno knew or should have known that Y.H. was particularly vulnerable or incapable of resistance, and that the offense "was part of an ongoing pattern of sexual abuse of the same victim under the age of 18 manifested by multiple incidents over a prolonged period of time."[4] The State did not allege nor did the jury find these last two aggravating factors.

The court imposed an exceptional sentence of a minimum of 180 months and a maximum of life, with community custody ordered "for any period of time the defendant is released from total confinement before the expiration of the maximum sentence."[5] The trial court stated in its findings of fact that it was imposing an exceptional sentence based on both the jury's findings and the court's oral findings at Bruno's sentencing hearing.

The court imposed several community custody conditions, including:

> 7. Abide by a curfew of 10pm-5am unless directed otherwise. Remain at registered address or address previously approved by [the Community Corrections Officer (CCO)] during these hours.
> . . . .
>
> 11. Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050

---

[3] Report of Proceedings (RP) (Jan. 29, 2016) at 776.
[4] RP (Jan. 29, 2016) at 791.
[5] CP at 54.

or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider.

. . . .

18. . . . Do not enter any parks/playgrounds/schools and or any places where minors congregate.[6]

Bruno appeals.

## ANALYSIS

### Sentencing Errors

*Offender Score*

Bruno and the State agree that the trial court erred when it added two points to his offender score for his Georgia robbery conviction because that conviction is not legally comparable to a Washington robbery conviction. Bruno and the State agree that Bruno's Georgia conviction is equivalent to Washington's first degree theft statute, which would only add one point.

Washington courts apply a two-part test to determine if an out-of-state conviction is comparable to a Washington conviction. State v. Morley, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998). First, "the elements of the out-of-state crime must be compared to the elements of Washington criminal statutes in effect when the foreign crime was committed." Morley, 134 Wn.2d at 606. Second, if the elements are not identical or if the out-of-state statute is broader than its Washington counterpart, "the sentencing court may look at the defendant's conduct, as evidenced by the indictment or information, to determine whether the conduct would have violated the comparable Washington statute." State v. Duke, 77 Wn. App. 532, 535, 892 P.2d 120 (1995).

---

[6] CP at 61-62.

Georgia's robbery statute includes a "sudden snatching" alternative means that is not included in the Washington robbery statute, and is therefore broader. GA. CODE ANN., § 16-8-40 (2010); see Byrd v. State, 171 Ga. App. 344, 344-45, 319 S.E.2d 460 (1984) (defining "sudden snatching"); cf. RCW 9A.56.190. At sentencing, the State did not provide evidence of Bruno's underlying conduct in his Georgia conviction, and therefore did not establish factual comparability. Thus, the trial court erred when it concluded that Bruno's Georgia conviction was legally comparable to Washington's robbery statute.

The parties agree that Bruno's Georgia conviction is legally comparable to Washington's first degree theft offense. RCW 9A.56.030(1); see Brown v. State, 309 Ga. App. 511, 710 S.E.2d 674 (2011) (robbery by sudden snatching accomplished when victim saw the defendant grab victim's wallet from unattended shopping cart and run out of store). First degree theft is not a violent offense for sentencing purposes. RCW 9.94A.030(55)(a). For a present nonviolent offense, each adult prior felony conviction adds one point to the defendant's offender score. RCW 9.94A.525(7), (17). Therefore, without evidence of his underlying conduct, Bruno's Georgia conviction is legally comparable to Washington's first degree theft offense and should have added one point to his offender score, not two.

*Exceptional Sentence*

Bruno argues that the trial court violated his Sixth Amendment right to a jury trial when it improperly relied on aggravating factors that had not been found by the jury to impose an exceptional sentence. Because the trial court explicitly incorporated its findings during its oral ruling, including the improper aggravating factors, into the findings of fact supporting its exceptional sentence, we agree.

Criminal defendants have a constitutional right to a jury trial. U.S. CONST. amend. VI. A defendant's right to a jury trial requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The "statutory maximum" is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" Blakely v. Washington, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). An exceptional sentence based on facts not stipulated to by the defendant or found beyond a reasonable doubt by a jury violate Blakely. State v. Hagar, 158 Wn.2d 369, 374, 144 P.3d 298 (2006).

Here, the trial court impermissibly based its exceptional sentence in part on two aggravating factors that the jury did not find beyond a reasonable doubt. The jury found only that Bruno's offense involved domestic violence. But the trial court also found that Bruno knew or should have known that Y.H. was particularly vulnerable or incapable of resistance and that the offense was part of "an ongoing pattern of psychological, physical or sexual abuse of the same victim manifested by multiple incidents over a prolonged period of time."[7] The jury did not find these two additional aggravating factors, and Bruno did not stipulate to them. Thus, the trial court's reliance on these factors when imposing the exceptional sentence was improper.

At oral argument, the State argued that the trial court's oral findings were not incorporated into its findings of fact and conclusions of law justifying its exceptional sentence. This is incorrect. The State prepared a draft of the findings of fact and

---

[7] CP at 58.

conclusions of law that stated that the Bruno's offense involved domestic violence and was part of an ongoing pattern of abuse over a sustained period of time under RCW 9.94A.535. The trial court added, "Also, oral findings incorporated from sentencing hearing 1/29/16" to the findings.[8] As explained above, these oral findings included the two aggravating factors not found by the jury. Thus, the trial court did include the two improper aggravating factors in its findings of fact justifying Bruno's exceptional sentence.

*Remedy*

At oral argument, the State withdrew the concession in its brief that remand was the appropriate remedy in this case. The State now argues that neither of these errors requires remand for resentencing because the trial court would have imposed the same sentence even if the errors had not occurred. Because the record does not clearly show that the trial court would have necessarily imposed the same sentence if the errors had not occurred and the State did not argue that the error was harmless, we disagree.

The State, relying on the trial court's statements during sentencing, argues that the record clearly indicates that the trial court would have imposed the same sentence if Bruno's standard range had been properly calculated. Because the trial court stated that its decision was based on Bruno's improperly calculated standard range sentence, we disagree.

"When the sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." State v. Parker, 132 Wn.2d 182, 189, 937 P.2d 575 (1997); see also In re Pers. Restraint of

---

[8] CP at 58.

Rowland, 149 Wn. App. 496, 501, 508-09, 204 P.3d 953 (2009) (granting personal restraint petition after concluding that the trial court's miscalculation of standard range sentence based on incorrect offender score was a "fundamental defect resulting in a miscarriage of justice" when the record did not clearly indicate that the trial court would have necessarily imposed the same exceptional sentence).

Here, the record does not clearly demonstrate that the trial court would have imposed the same exceptional sentence had it properly calculated Bruno's offender score as one. During sentencing, the trial court noted that it was restricted by sentencing parameters established by the legislature. It went on to state that Bruno's standard range sentence based on his criminal history was 95 to 125 months. The trial court's acknowledgment that it was constrained by Bruno's standard range sentence indicates that it would not have necessarily imposed the same exceptional sentence had it properly calculated Bruno's standard range sentence. Therefore, we conclude that the record does not indicate that the trial court would have necessarily imposed the same sentence had it properly calculated Bruno's standard range sentence.

The State next argues that the trial court would have imposed the same exceptional sentence because of the trial court's statement that 180 months was "the least amount of time that is appropriate in this case."[9] We assume that the State is arguing that the trial court's consideration of aggravating factors not found by the jury was harmless error. Because the State has not carried its burden of showing that the trial court's consideration of two improper aggravating factors was harmless, we disagree.

---

[9] RP (Jan. 29, 2016) at 791.

An exceptional sentence based on "an unstipulated fact that was not found by a jury beyond a reasonable doubt" violates Blakely. State v. Hagar, 158 Wn.2d 369, 374, 144 P.3d 298 (2006). The proper remedy in such cases is remand for resentencing unless the State demonstrates that the error was harmless. Hagar, 158 Wn.2d at 373 n.2; State v. Suleiman, 158 Wn.2d 280, 294-95, 143 P.3d 795 (2006).

Here, after stating Bruno's standard range sentence, the trial court described the three aggravating factors that it believed applied to the case, two of which had not been found by the jury.[10] The trial court then found that there was "compelling evidence to support the application of an exceptional sentence upwards."[11] The trial court's statements indicate that it based its exceptional sentence on all three aggravating factors.

The State has not demonstrated that this error was harmless. The State focuses on the trial court's statement that its sentence of 180 months was justified by the circumstances of the case. But this argument relies on the trial court's conclusion that all three aggravating factors applied and justified its imposition of the exceptional sentence. The State's position does not establish that the trial court's consideration of the improper aggravating factors underlying its conclusion was harmless error. Thus, this is insufficient to show that the trial court's consideration of improper aggravating factors was harmless error.

But even if the record clearly indicated that the trial court would have imposed the same exceptional sentence if either one of the errors was corrected, it is not clear that the trial court would have made the same decision had both errors been corrected.

---

[10] The trial court later said that it was also considering Bruno's lack of remorse, although it did not state that this was an aggravating factor.
[11] RP (Jan. 29, 2016) at 791.

9

The trial court erroneously concluded that Bruno's standard range sentence was 95 to 125 months based on its calculation of his offender score as two. The trial court then imposed an exceptional sentence of a minimum of 180 months and a maximum of life based in part on two aggravating factors that were not stipulated to by Bruno or found by the jury. The trial court should have calculated Bruno's offender score as one. RCW 9.94A.525(3). Bruno's standard range sentence should have been 86 to 114 months. RCW 9A.44.050; RCW 9.94A.510, .515. The aggravating factor found by the jury was that the crime was one of domestic violence and involved an ongoing pattern of abuse of a victim. RCW 9.94A.535(3)(h)(i). Thus, to impose the same exceptional sentence of 180 months, the trial court would have to add 66 months to Bruno's standard range based on the sole aggravating factor found by the jury.

We are not convinced that the record indicates that, had both errors been corrected, the trial court would have imposed the same exceptional sentence. Thus, we conclude that this case must be remanded for resentencing with an offender score of one and consideration of solely the aggravating factor found by the jury.

The State also argues that the trial court stated that each of the aggravating factors it found were sufficient alone to support Bruno's exceptional sentence.

Generally, appellate courts will not remand for resentencing where the trial court will impose the same sentence based on other valid aggravating factors. State v. Gaines, 122 Wn.2d 502, 512, 859 P.2d 36 (1993). But "[i]mposition of an exceptional sentence is directly related to a correct determination of the standard range. That determination can be made only after the offender score is correctly calculated." State v. Collicott, 118 Wn.2d 649, 660, 827 P.2d 263 (1992).

10

As discussed above, the trial court erred in determining Bruno's standard range sentence after it miscalculated Bruno's offender score and considered aggravating factors not found by the jury. The record does not clearly indicate that the trial court would have necessarily imposed the same exceptional sentence had it begun with the proper standard range sentence. Because of the trial court's error in calculating Bruno's standard range sentence, especially when combined with its improper consideration of aggravating factors, we conclude that remand for resentencing is necessary.

### Community Custody Conditions

Bruno argues that the trial court erred because several of the community custody conditions it imposed are unconstitutionally vague or are not crime-related. We consider each of Bruno's arguments in turn.

"'[I]llegal or erroneous sentences may be challenged for the first time on appeal.'" State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008) (quoting State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999)). "This court reviews community custody conditions for abuse of discretion, and will reverse them only if they are 'manifestly unreasonable.'" State v. Irwin, 191 Wn. App. 655, 652, 364 P.3d 830 (2015) (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010)). A trial court abuses its discretion if it imposes an unconstitutional condition. Irwin, 191 Wn. App. at 652.

*Unconstitutional Vagueness*

Bruno argues that the trial court erred because its community custody conditions prohibiting him from entering certain areas and from engaging with certain sexually explicit material are unconstitutionally vague. We examine each in turn.

11

"[T]he due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct." Bahl, 164 Wn.2d at 752. Thus, laws must "(1) provide ordinary people fair warning of proscribed conduct and (2) have standards that are definite enough to 'protect against arbitrary enforcement.'" Irwin, 191 Wn. App. at 652-53 (internal quotation marks omitted) (quoting Bahl, 164 Wn.2d at 752-53).

When determining whether challenged language is sufficiently definite to provide fair warning, the court must read the language in context and give it a "sensible, meaningful, and practical interpretation." City of Spokane v. Douglass, 115 Wn.2d 171, 180, 795 P.2d 693 (1990). If a term is undefined, "the court may consider the plain and ordinary meaning as set forth in a standard dictionary." Bahl, 164 Wn.2d at 754 (citing State v. Sullivan, 143 Wn.2d 162, 184-85, 19 P.3d 1012 (2001)).

These standards apply to community custody conditions. Irwin, 191 Wn. App. at 653. But "'a community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" Sanchez Valencia, 169 Wn.2d at 793 (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009)). "'[I]mpossible standards of specificity' or 'mathematical certainty' are not required [to avoid a finding of unconstitutional vagueness] because some degree of vagueness is inherent in the use of language." State v. Halstein, 122 Wn.2d 109, 118, 857 P.2d 270 (1993) (quoting City of Seattle v. Eze, 111 Wn.2d 22, 26-27, 759 P.2d 366 (1988)); Haley v. Medical Disciplinary Bd., 117 Wn.2d 720, 740, 818 P.2d 1062 (1991).

Rather, a community custody condition is sufficiently definite if persons of ordinary intelligence would understand what behavior is proscribed. Douglass, 115 Wn.2d at 179.

First, Bruno argues that the community custody condition, "Do not enter any parks/playgrounds/schools and or any places where minors congregate," is unconstitutionally vague.[12] The State argues that the first clause of the community custody condition is sufficiently definite and should not be stricken. But the State agrees that the second clause should be stricken because it does not provide adequate notice to Bruno as to what is proscribed.

Here, the first clause of Bruno's community custody condition restricting him from entering parks, playgrounds, or schools is not unconstitutionally vague. This clause provides a definitive list of prohibited locations that would provide ordinary people sufficient notice to understand the proscribed conduct. See Irwin, 191 Wn. App. at 655. Thus, the first clause of the condition provides sufficient direction to protect Bruno from arbitrary enforcement, and is not unconstitutionally vague.

Bruno argues that the condition's prohibition on his entering "schools" is vague because the term includes places where children do not congregate, such as colleges.[13] We disagree. The condition places Bruno on sufficient notice of what types of schools he may not enter when read in the context of the entire condition and in light of his underlying offense. The fact that "schools" could include institutions of higher learning or vocational schools, as noted by Bruno, does not render the condition unconstitutionally vague.

---

[12] CP at 62.
[13] Br. of Appellant at 19.

But the second clause of the community custody condition, which prohibits Bruno from entering "places where minors congregate," is unconstitutionally vague.[14] This court recently analyzed a similar community custody condition in Irwin. 191 Wn. App. at 654-55. There, a community custody condition prohibited the offender from "'frequent[ing] areas where minor children are known to congregate, as defined by the supervising [CCO].'" Irwin, 191 Wn. App. at 649. This court struck the condition, concluding that the offender could not know whether it included "'public parks, bowling alleys, shopping malls, theaters, churches, hiking trails,' and other public places where there may be children." Irwin, 191 Wn. App. at 654. This court stated that "[w]ithout some clarifying language or an illustrative list of prohibited locations . . ., the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.'" Irwin, 191 Wn. App. at 655 (internal quotation marks omitted) (quoting Bahl, 164 Wn.2d at 753). Further, this court noted that the unconstitutional vagueness would not be cured by the CCO defining which places were included, as this could lead to arbitrary enforcement. Irwin, 191 Wn. App. at 655.

The second clause of the challenged community custody condition is analogous to the unconstitutionally vague language in Irwin. In contrast with the first clause of the condition, the prohibition on entering "places where minors congregate" does not provide Bruno with fair warning of which locations are included. Although the first part of the condition provides an illustrative list of prohibited places, the "and or" language used by the trial court demonstrates that the list does not limit the scope of the "any places where minors congregate" language. Moreover, the clause does not provide any standards

---

[14] CP at 62.

14

against arbitrary enforcement. Thus, we remand with instructions to retain the first clause of the condition and strike the second clause as unconstitutionally vague.

Second, Bruno argues that the community custody condition that prohibits him from possessing, using, accessing, or viewing "sexually explicit materials as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by [his] sexual deviancy provider" is unconstitutionally vague.[15] The State responds that the condition is sufficiently definite to notify an ordinary person what behavior is proscribed. We agree with the State.

Community custody conditions that implicate material protected under the First Amendment are held to a stricter standard of definiteness to avoid a chilling effect on the exercise of First Amendment rights. Bahl, 164 Wn.2d at 753.

"Sexually explicit material" is defined by statute as

> any pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or of anthropological significance shall not be deemed to be within the foregoing definition.

RCW 9.68.130(2). No published Washington case has held that this language is unconstitutionally vague.[16]

"Sexually explicit conduct" is defined by statute as actual or simulated

---

[15] CP at 62.

[16] The Bahl court declined to determine whether the statutory definition alone was sufficient to provide notice because it was not vague when read in context and alongside dictionary definitions, and because the defendant was not convicted under the statute. 164 Wn.2d at 759-60. Other published Washington decisions applying the statute have not addressed this issue.

(a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
(b) Penetration of the vagina or rectum by any object;
(c) Masturbation;
(d) Sadomasochistic abuse;
(e) Defecation or urination for the purpose of sexual stimulation of the viewer;
(f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and
(g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

RCW 9.68A.011(4). No published Washington case has held that this language is unconstitutionally vague.[17]

"Erotic materials" are defined by statute as

printed material, photographs, pictures, motion pictures, sound recordings, and other material the dominant theme of which taken as a whole appeals to the prurient interest of minors in sex; which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters or sado-masochistic abuse; and is utterly without redeeming social value.

RCW 9.68.050(2). The term "erotic" as used in chapter 9.68 RCW is not unconstitutionally vague. Bahl, 164 Wn.2d at 760 n.8 (citing Soundgarden v. Eikenberry, 123 Wn.2d 750, 758-59, 871 P.2d 1050 (1994)).

Here, the community custody condition prohibiting Bruno from possessing, using, accessing, or viewing any sexually explicit material, erotic materials, or material depicting sexually explicit conduct is not unconstitutionally vague even though it involves material

---

[17] Several federal cases have held the term "sexually explicit" in the context of custody conditions is not unconstitutionally vague. See United States v. Zobel, 696 F.3d 558, 576 (6th Cir. 2012); United States v. Thompson, 653 F.3d 688, 696 (8th Cir. 2011); United States v. Thielemann, 575 F.3d 265, 277-78 (3d Cir. 2009); United States v. Rearden, 349 F.3d 608, 619-20 (9th Cir. 2003).

protected under the First Amendment. Each of the terms in the condition are supported by a statutory definition that provides substantial direction as to what falls within the condition's scope. For example, "sexually explicit material" specifically exempts "works of art or of anthropological significance," the definition of "sexually explicit conduct" provides a list of qualifying behavior, and the "erotic materials" included in Bruno's community custody condition are those whose dominant theme "appeals to the prurient interest of minors in sex; which is patently offensive because it affronts contemporary community standards . . .; and is utterly without redeeming social value."[18] Thus, these statutes provide substantial guidance as to what material falls within their scope and, therefore, the condition incorporating them is not unconstitutionally vague.

In addition, the community custody condition provides sufficient standards to avoid arbitrary enforcement. The condition clearly states that Bruno may not "possess, use, access or view" certain materials.[19] It then lists the material that he may not engage with, as discussed above. The final part of the condition states that he may obtain approval from his sexual deviancy provider to possess, use, access, or view proscribed materials. This clause does not give a CCO or treatment provider discretion to interpret these terms for enforcement purposes. Rather, it provides Bruno with an opportunity to avoid violations by seeking approval from his sexual deviancy treatment provider to engage with proscribed materials.

Bruno compares his community custody condition to that in Bahl, which concluded that a community custody condition prohibiting the offender from possessing or accessing pornographic materials was unconstitutionally vague. 164 Wn.2d at 754; see also United

---

[18] CP at 62; see RCW 9.68.130(2); RCW 9.68A.011(4); RCW 9.68.050(2).
[19] CP at 62.

States v. Loy, 237 F.3d 251 (3d Cir. 2001) (discussed by Bahl, 164 Wn.2d at 746-48). The Bahl court noted that "pornography" does not have a legal definition, and the community custody condition it appeared in did not clarify what was proscribed and did not provide sufficient protections against arbitrary enforcement. 164 Wn.2d at 754-55. These issues are not present here. Bruno's community custody condition uses the narrower terms "sexually explicit" and "erotic." Also, unlike "pornography", these terms have accompanying statutory definitions. Therefore, the Bahl court's analysis of a community custody condition relating to pornography is inapplicable to the present case.

Bruno argues that the statutory definitions of the terms in the community custody condition do not offer sufficient clarity and thus are unconstitutionally vague. For example, he argues that an ordinary person cannot reasonably know whether certain materials qualified as "works of art or of anthropological significance."

The statutory language challenged by Bruno is not unconstitutionally vague. Each statute provides guidance about what falls within its scope. They need not provide exact examples of each term to be sufficiently clear. Bruno's assertion that each of the statutes cited by his community custody condition are not sufficiently clear is unpersuasive.

*Crime-Relatedness*

Bruno argues that the trial court erred because its community custody conditions imposing a curfew and prohibiting him from engaging with sexually explicit material are not sufficiently crime-related. We examine each in turn.

"As part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions." RCW 9.94A.505(9). A "crime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circumstances of the

18

crime for which the offender has been convicted." RCW 9.94A.030(10). Directly related community custody conditions include those that are "reasonably crime-related" to the underlying offense. State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014). A court may order an offender to comply with these crime-related prohibitions during their term of community custody. RCW 9.94A.703(3)(f).

"This court reviews a trial court's imposition of crime-related community custody conditions for abuse of discretion." Irwin, 191 Wn. App. at 656. The factual bases supporting a crime-related condition are reviewed for substantial evidence. Irwin, 191 Wn. App. at 656. A crime-related condition may be struck when there is no evidence in the record supporting a connection between the condition and the circumstances of the crime. Irwin, 191 Wn. App. at 656-57; see State v. O'Cain, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008) (striking community custody condition that prohibited all Internet access as insufficiently crime-related). But crime-related conditions may be upheld "when there is some basis for the connection." Irwin, 191 Wn. App. at 657 (citing Kinzle, 181 Wn. App. at 785 (holding that a condition prohibiting the offender from dating women or forming relationships with families with minor children was sufficiently related to his crime, which involved children he came into contact with through a social relationship with their parents)).

First, Bruno argues that the trial court abused its discretion when it imposed a community custody condition requiring him to adhere to a curfew from 10 p.m. to 5 a.m. because the condition is not related to the circumstances of his offense. The State agrees that the curfew condition is not crime-related. Bruno's rapes of Y.H. all occurred at night in Y.H.'s bedroom. Therefore, a curfew constraining Bruno to his residence at night is not

19

related to the circumstances of his crime. We conclude that the trial court exceeded its authority when it imposed the condition, and remand with instructions to strike the condition.

Second, Bruno argues that the trial court exceeded its authority because the community custody condition prohibiting him from possessing, using, accessing, or viewing certain material is not sufficiently crime-related. The State argues that the prohibition is related to the underlying circumstances of his crime.

Here, the trial court properly imposed prohibitions on Bruno's possessing, using, accessing, or viewing erotic materials defined by RCW 9.68.050 and any material depicting sexually explicit conduct as defined by RCW 9.68A.011(4). Bruno's offense is a sexual offense that involved raping a minor. RCW 9.68.050 concerns erotic materials whose "dominant theme . . . appeals to the prurient interest of minors in sex." Similarly, RCW 9.68A.011(4) appears in the definitions section of Washington's statute governing the sexual exploitation of children. There is ample evidence in the record establishing that Bruno's offense concerned the sexual exploitation of a minor, and prohibiting him from engaging with sexually explicit or erotic material concerning minors is certainly related to the circumstances of his underlying offense.

But the trial court improperly prohibited Bruno from possessing, using, accessing, or viewing any sexually explicit material as defined by RCW 9.68.130. RCW 9.68.130 appears under Washington's general obscenity and pornography statute, not one particular to minors. The State has not cited any part of the record demonstrating that Bruno's engagement with sexually explicit material in general is connected to his offense. The broad prohibition on all sexually explicit material is not sufficiently related to the

circumstances of Bruno's crime to justify its inclusion in his community custody prohibition. On remand, the trial court may engage in further fact-finding to support this clause of Bruno's community custody condition. Otherwise, it should strike the reference to sexually explicit material as defined by RCW 9.68.130.

Bruno requests that this court decline to follow the recent Court of Appeals, Division Three decision in State v. Magana, 197 Wn. App. 189, 201, 389 P.3d 654 (2016). There, the offender was convicted of third degree rape of a child. Magana, 197 Wn. App. at 193. The Court of Appeals affirmed the trial court's community custody conditions concerning his access to X-rated movies, adult book stores, and sexually explicit materials, stating only that such items "were all crime related and properly imposed." Magana, 197 Wn. App. at 201.

We decline to follow Magana's cursory reasoning. The Court of Appeals did not provide any citation to supporting facts in the record demonstrating that the offender's engagement with X-rated movies, adult book stores, or sexually explicit materials was related to the circumstances of his offense. The fact that the underlying offense was a sex offense is insufficient to justify a community custody condition prohibiting engagement with any sexually explicit materials.

### Appellate Costs

Bruno asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. But when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's

financial circumstances have significantly improved since the last determination of indigency." RAP 14.2.

Here, Bruno was authorized to proceed as an indigent party on appeal. If the State has evidence indicating that Bruno's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

We vacate the judgment and sentence and remand for resentencing with an offender score of one and with consideration of the sentencing enhancement that was found by the jury. On remand, the trial court should (1) strike community custody condition 7, (2) conduct additional fact-finding in support of or strike the language of community custody condition 11 related to sexually explicit material as defined by RCW 9.68.130, and (3) strike the language "and or any places where minors congregate" in community custody condition 18.[20]

_Trickey, ACJ_

WE CONCUR:

_Appelwick, J_          _Cox, J._

---

[20] On May 30, 2017, one day before oral argument, the State submitted a second Statement of Additional Authorities. The State may bring these sources before the trial court for consideration at resentencing.